IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BENSON GITHIEYA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GLOBAL TEL*LINK CORPORATION, | : | CIVIL ACTION NO. |
| | : | 1:15-CV-0986-AT |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

Plaintiff Benson Githieya brings this class action suit to challenge the billing practices of Global Tel*Link Corporation ("GTL"), a Delaware corporation which provides communication services to over 2,200 correctional facilities and 1.1 million inmates in forty-eight states. (Am. Compl. ¶¶ 4, 5.)  Mr. Githieya is a public defender who seeks to communicate with his clients as well as a loved family member incarcerated in a prison facility operated by the South Carolina Department of Corrections.  He brings this case on behalf of a class of all similarly situated individuals affected by Defendant's commercial billing practices in a context where the Defendant allegedly maintains monopoly control over phone communications between inmates and individuals outside of the prison system.  Plaintiff alleges that Defendant exploits this monopoly relationship to impose gouging fees and charging practices to customers with no

alternatives.[1] Plaintiff contends after he opened and funded an account with GTL's Inmate Calling Service, GTL classified his account as "inactive" after 90 days and appropriated for itself all of the funds remaining in the account. Plaintiff further contends that Defendant has similarly unlawfully routinely converted for its own use the account funds of class members and thereby defrauded its customers, breached its implied duty of good faith and fair dealing in Plaintiff's and class members' contracts, and unjustly enriched itself. (*Id.* ¶ 64.)

Plaintiff raises serious issues in his Complaint. However, the Court cannot consider and reach these issues at this point because GTL's pending motion to compel arbitration of this contract dispute is supported by governing law. For the following reasons, GTL's Motion to Stay and Compel Arbitration [Doc. 17] is **GRANTED**.

I.   **LEGAL STANDARD**

Defendant has asked the Court to compel arbitration under Sections 3 and 4 of the FAA. (Doc. 7-1 at 1.) As a starting place, the Court is "mindful of the Supreme Court's instruction that "arbitration is simply a matter of contract.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 144 (2014) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Due to the contractual nature of arbitration, "the first task of a court

---

[1] The Plaintiff's brief notes that the Federal Communication Commission has recently promulgated new rules to address the billing practices of companies providing phone access to inmates.

asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). A court must first consider "any formation challenge to the contract containing the arbitration clause," *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012), because "a party plainly cannot be bound by an arbitration clause to which it does not consent." *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1213 (2014) (citing *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)). Section 4 of the FAA is clear on this point: "If the making of the arbitration agreement [is] in issue, the court shall proceed summarily to the trial thereof" – as opposed to ordering arbitration pursuant to that agreement. 9 U.S.C. § 4.

Unless there is clear and unambiguous evidence that the parties agreed to have an arbitrator decide disputes over contract formation, *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (quoting and citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 79 (2010)), such "gateway" issues of "arbitrability" are "for a court to decide." *BG Grp.*, 134 S. Ct. at 1213 (citing *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84 (2002)). If the challenge to the contract is based on issues other than formation, *e.g.*, enforceability, voidability, or some other equitable defense, that challenge would be the type that "is for the arbitrator to decide." *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S.

3

Ct. 500, 503 (2012) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). And while "the validity of an arbitration agreement is generally governed by the Federal Arbitration Act," "state law generally governs whether an enforceable contract or agreement to arbitrate exists" at all. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005).[2]

A genuine dispute of fact concerning contract formation precludes a court from deciding as a matter of law that the parties did or did not enter into an agreement to arbitrate. *See Granite Rock Co. v. Teamsters*, 561 U.S. at 297-99 (holding that the district court must first "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce"); *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989-90 (11th Cir. 2012); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008). Finally, "a district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Id.* at 786 (internal quotation marks omitted).

---

[2] The contract at issue here does not contain a governing law clause, but the parties appear to agree that Georgia law governs their contract dispute. (*See* Doc. 17-1 at 13 (Defendant relying on Georgia law); Doc. 19 at 5 (Plaintiff relying on Georgia law).) It is undisputed that the acts potentially giving rise to the contract at issue occurred in Georgia. "Under the [Georgia] rule of *lex loci contractus*, the validity . . . of a contract [is] governed by the substantive law of the state where the contract was made." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006) (quoting *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 417 S.E.2d 671, 673 (Ga. Ct. App. 1992)) (internal citations omitted). Accordingly, Georgia law governs the contract formation issue here.

## II. FACTUAL BACKGROUND

Plaintiff is a criminal defense lawyer who represents clients in the metropolitan Atlanta area. (Am. Compl. ¶ 2.) On or around March 12, 2014, Plaintiff opened and funded an account with GTL's Inmate Calling Service using GTL's automated system. (*Id.* ¶¶ 16-17.) Plaintiff put $25 in his account, which, in Plaintiff's words, "was paid to GTL in consideration of GTL's implied or express promise to provide him with a certain number of minutes of inmate calling services in exchange for said money." (*Id.* ¶¶ 20-21.)

During the course of opening Plaintiff's account through GTL's automated system, the automated voice "made reference to a 'terms of use,' as well as a 'privacy policy' that could be found at a webpage, www.connectnetwork.com." (*Id.* ¶ 23.) In particular, the automated voice said:

> Please note that your account, and any transactions you complete, with GTL, PCS, DSI-ITI, or VAC are governed by the terms of use and the privacy statement posted at www.offenderconnect.com. The terms of use and privacy statement were most recently revised on July 3, 2013.

(Motion to Dismiss, Exhibit, Corrected Declaration of John W. Baker, II, Doc. 18 ¶ 3.)[3] The automated system did not require Plaintiff to manifest his assent by pressing a number or saying any particular words. (*Id.* ¶ 4; Am. Compl. ¶ 26.)

---

[3] Defendant attached to its Motion copies of the relevant documents referenced in the Complaint, including the Terms of Use and the text of the words spoken to Plaintiff by the automated system when Plaintiff set up his account. (Doc. 17-2 at 6-9; Doc. 18.) Plaintiff has not challenged the authenticity of these documents. Thus, the Court may consider these documents on Defendant's Motion to Dismiss without converting the motion to a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for

One of the terms in the Terms of Use document referenced by the automated system concerns arbitration. That provision reads as follows:

> **Arbitration.** [ ] All claims arising out of or relating to these Terms of Use (including its formation, performance and breach) and the Service shall be finally settled by binding arbitration, excluding any rules or procedures governing or permitting class actions. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Use, including, but not limited to any claim that all or any part of these Terms of Use is void or voidable.

(Doc. 17-2 at 8.)

Plaintiff did not use all of the $25 balance on the initial March 12th call. (Am. Compl. ¶ 55.) After Plaintiff's account was not used for 90 consecutive days, Defendant, without notice, labeled his account as "inactive" and zeroed out his account balance. (*Id.* ¶¶ 37-39.) Plaintiff filed a four-count class action complaint seeking to hold Defendant accountable for converting his and others' funds in this manner.

## III. DISCUSSION

Defendant moves to compel arbitration, arguing that the parties made an oral contract, and that the Terms of Use and the arbitration clause therein were incorporated by reference into that oral contract. One of those provisions, Defendant points out, is a delegation clause that Plaintiff does not directly challenge. Plaintiff does not deny forming a contract with GTL, but denies that the contract incorporated the Terms of Use by reference. He therefore argues

---

summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

that he did not form an agreement to arbitrate. Plaintiff also argues that the arbitration clause is both substantively and procedurally unconscionable under Georgia law.

An important threshold issue on any motion to compel arbitration is "who is supposed to decide what in considering challenges to a contract containing an arbitration clause." *Solymar Investments*, 672 F.3d at 985. The "what" issues to be decided in this case are formation and unconscionability. Defendant argues that the delegation clause clearly and unmistakably commits both formation and unconscionability challenges to resolution by an arbitrator by providing that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Use." (Doc. 17-2 at 8.)

It is by now well established that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Martinez*, 744 F.3d at 1246 (quoting *Rent–A–Center*, 561 U.S. at 68-69). And when parties do clearly and unmistakably delegate those issues, courts "require the basis of challenge to be directed specifically to the [delegation clause] before the court will intervene." *Rent-A-Center*, 561 U.S. at 71-72. "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision 'as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge

7

to the validity of the Agreement as a whole for the arbitrator.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146-47 (11th Cir. 2015) (quoting *Rent-A-Center*, 561 U.S. at 72).

Here, the delegation clause clearly and unmistakably commits "interpretation, applicability, enforceability or formation of the[] Terms of Use" to resolution by an arbitrator. It is also clear that Plaintiff's formation challenges are not directed at the delegation provision in particular, but rather the incorporation by reference of the entire Terms of Use. Plaintiff admits in his Amended Complaint that the automated voice "made reference to a 'terms of use,' as well as a 'privacy policy' that could be found at a webpage, www.connectnetwork.com." (Am. Compl. ¶ 23.) Plaintiff argues, though, that "[w]hile he vaguely recalls the automated system referencing a 'terms of use,' the system never described those terms, never stated they contained an arbitration agreement, did not provide him time to review the terms prior to completing the transaction, and never sought his assent prior to completing the transaction." (Resp. at 5.) These are obviously challenges to the incorporation of the entire Terms of Use document — not the arbitration provision and, more importantly on this Motion, not the specific delegation provision.

In addition, Plaintiff's substantive and procedural unconscionability arguments do not specifically challenge the delegation clause, either. They appear to challenge only the unconscionability of the arbitration clause, the class action waiver clause, and GTL's method of incorporating the Terms of Use. As in

*Rent-A-Center*, nothing about Plaintiff's unconscionability arguments disputes or even mentions delegation. *See Rent-A-Center*, 561 U.S. at 72–73 (finding defendant's unconscionability arguments did not specifically challenge the delegation clause where they were directed at the "entire agreement" and did not mention delegation). Plaintiff's observations regarding the impracticality and elusiveness of Defendant's methods of notifying customers might indeed be of weight and considered as part of Plaintiff's unconscionability claim – but that does not alter the fact that governing law is clear under the facts in his individual case that the dispute must be referred to arbitration, at very least for determination of gateway issues of arbitrability.

Plaintiff contends in his brief that no agreement was made, and therefore the Court should undertake the analysis it undertook in its recently affirmed *Regan* decision. *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015) aff'd No. 15-10364, --- F. App'x. --- (11th Cir. June 18, 2015) (per curiam). There, the Court relied on *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) for the proposition that when "it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration and "is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate* . . . there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act." *Chastain*, 957 F.2d at 854. In such cases, the district court must decide whether the parties are bound by the arbitration provision of the

9

purported agreement. (*Id.* at 854-55.) To sufficiently place contract formation at issue, Plaintiff must: (1) unequivocally deny that the agreement (containing the arbitration clause) was made; and (2) "must substantiate the denial of the contract with enough evidence to make the denial colorable." *Id.* at 855.

*Regan* is a far cry from this case, though, as is *Chastain*. In both of those cases, the plaintiff unequivocally denied that any – *any* – agreement existed. In both of those cases, there was no signed document or orally executed contract. In *Regan*, when the plaintiff was released from jail, he was allegedly forced to take a prepaid debit card with his money on it. He also allegedly received a packet of papers, one sheet of which, though he didn't realize it, was a cardmember agreement that contained an arbitration clause. The Court held those allegations were sufficient to put the making of any agreement relating to the prepaid debit car in issue. And in *Chastain*, it was undisputed that Brenda Chastain never signed either of the two customer agreements that supposedly required her to arbitrate her claims.

Here, Plaintiff himself alleges that he formed a contract. (Am. Compl. ¶¶ 27, 78.) Indeed, two of Plaintiff's claims – breach of contract and unjust enrichment – appear to rely on contract formation to obtain redress. (Am Compl. ¶¶ 78, 90.) Rather than challenging, as Regan and Chastain did, "the very existence of any agreement, including the existence of an agreement to arbitrate," Plaintiff here simply disagrees that the Terms of Use were incorporated by reference into his contract with GTL. *Chastain*, 957 F.2d at 854.

And even if Plaintiff did satisfy the first prong of *Chastain* by "unequivocally" denying that any agreement was made — which he does not — he has not "substantiate[d] the denial of the contract with enough evidence to make the denial colorable." *Id.* at 855. On the contrary, the record before the Court demonstrates both parties' acceptance that at least some contract, *i.e.*, money for minutes, was made, and that the automated voice told Plaintiff that the contract was governed by Terms of Use available on a specified website. Thus, *Chastain* does not govern this case because neither of the *Chastain* test's conjunctive prongs is satisfied. "[T]he district court's duty to compel arbitration pursuant to the Act" is therefore triggered in this case. *Id.* at 854.

## IV. CONCLUSION

In sum, Plaintiff alleges he formed a contract but disputes the content of that contract. He agrees that the automated phone system mentioned Terms of Use that governed the contract and the website where the Terms could be found, but Plaintiff admits that he did not read them. He now claims those Terms – including the delegation, arbitration, and class action waiver clauses contained therein – are not part of the contract he formed, for various reasons.

But he does not specifically challenge his entry into a contractual relationship or the delegation clause of the Terms of Use. The delegation clause provides that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of

Use." (Doc. 17-2 at 8.)  Under *Rent-A-Center*, "whether the parties have agreed to arbitrate" is one of the gateway issues of arbitrability that the parties may delegate to an arbitrator.  561 U.S. at 69.  Here they have.  Plaintiff's arguments to the contrary are unpersuasive, so the parties are hereby **COMPELLED** to arbitrate Plaintiff's claims, including the issues of the incorporation by reference of the Terms of Use and the substantive and procedural unconscionability of the various aspects of the parties' contract.  To clarify, the only issues decided herein are that *Chastain* does not govern this case (and that *Rent-A-Center* does), and that an arbitrator should decide the gateway issues of arbitrability raised by Plaintiff.  If the arbitrator should decide the dispute is subject to mandatory arbitration, the case should proceed to arbitration on the merits of Plaintiff's claims.  If the arbitrator determines the dispute is *not* subject to mandatory arbitration, the arbitrator should notify the Court accordingly.

Finally, this case is **STAYED** and **ADMINISTRATIVELY CLOSED**[4] pending the outcome of the arbitration.  The parties are **DIRECTED** to inform the Court of any such outcome within 10 days thereof.

**IT IS SO ORDERED** this 25th day of January, 2016.

*/s/ Amy Totenberg*
**Amy Totenberg**
**United States District Judge**

---

[4] Administrative closure of a case does not prejudice the rights of the parties to litigation in any manner.  The parties may move to re-open an administratively closed case at any time.