# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BENSON GITHIEYA, *et al.*<br><br>        Plaintiffs,<br><br>v.<br><br>GLOBAL TEL LINK CORP.,<br><br>        Defendant. | CIVIL ACTION NO:<br>1:15-CV-00986-AT |

## PLAINTIFFS' MOTION FOR SANCTIONS
## AND BRIEF IN SUPPORT THEREOF

Michael A. Caplan
James W. Cobb
T. Brandon Waddell
Sarah Brewerton-Palmer
Ashley C. Brown
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com
jcobb@caplancobb.com
bwaddell@caplancobb.com
spalmer@caplancobb.com
abrown@caplancobb.com

James Radford
Georgia Bar No. 108007
**RADFORD & KEEBAUGH, LLC**
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

RELEVANT FACTS AND PROCEDURAL POSTURE ..........................................5

    A.    GTL's IVR Scripts and Information. ...................................................... 5

    B.    In 2015, GTL Relied on the Contents of Its
        Call Script to Request Arbitration. ......................................................... 7

    C.    In 2017, GTL Produced an Obsolete 2010 Call Script and Falsely
        Testified Under Oath that the Script Did Not Change............................. 7

    D.    GTL Opposed Class Certification, Relying on Misleading Assertions that
        Class Members Heard the "May Expire" Statement. ..............................10

    E.    Plaintiffs Discovered that the "May Expire" Statement Had Been
        Removed and Alerted GTL to that Fact, but GTL Continued to Mislead
        Plaintiffs and the Court. .....................................................................11

    F.    Plaintiffs Raised the Issue of GTL's Discovery Misconduct, and GTL
        Made Objectively False Statements to the Court. ...................................13

    G.    GTL's Court-Ordered Document Production Confirmed Its Statements
        Were False and that It Failed to Comply with Its Discovery Obligations.
        .......................................................................................................14

    H.    At the Court-Ordered Rule 30(B)(6) Deposition, GTL Confirmed It Made
        False and Misleading Statements, Yet It Offered Other Demonstrably
        False Testimony. ...............................................................................16

ARGUMENT AND CITATION TO AUTHORITY ...............................................20

    A.    This Court Should Impose Sanctions on GTL Because It Has Conducted
        Discovery in Bad Faith and Has Perpetrated a Fraud on This Court. ......20

    B.    The Court Should Strike GTL's Answer. ..............................................23

1.    The Court Has Authority to Strike GTL's Answer. ......................23

2.   GTL's Conduct Has Prejudiced Plaintiffs and the Putative Class. ....25

C.    Alternatively, This Court Should Establish the Terms Of the Class Members' Contracts and Preclude GTL From Arguing That Any Plaintiff or Class Member Agreed to Its Inactivity Policy. ...................................27

D.    Alternatively, This Court Should Strike GTL's Response to Plaintiffs' Motion for Class Certification. ..............................................................29

E.    GTL Should Also be Ordered Pay the Fees Plaintiffs Incurred in Their Months-Long Effort to Discover the Terms of GTL's IVR Script. .........30

CONCLUSION ...................................................................................................30

## INTRODUCTION

Plaintiffs filed this action in 2015, alleging GTL has wrongfully taken prepaid deposits from the millions of individuals who established prepaid "AdvancePay" calling accounts using GTL's interactive-voice-response (IVR) telephone system. From day one of this case, the content of the call script GTL used in its IVR system has been, in this Court's words, "the centerpiece issue in this lawsuit."[1] The assented-to words in that script formed the contracts between GTL and the class members.

Given the importance of the IVR script, Plaintiffs focused much of their discovery efforts on gathering evidence relating to the contents of the script during the time period relevant to this case—2008 through the present day. For GTL's part, it has claimed from its very first pleading that it used the text of a single script throughout the relevant time period. And it has relied on that single script for its defenses to Plaintiffs' contract claim—first, by requesting arbitration,[2] and then by asserting that GTL disclosed the breakage policy to Plaintiffs by including the following statement in the script: "Advance Pay balances that remain unused may expire after 90 days"[3] (referred to in this Motion as the "may expire" statement).

During discovery, Plaintiffs repeatedly sought information about any changes

---

[1]     Dkt. 147 at 8:16-19. Plaintiffs refer to the page numbers assigned by the Court's CM/ECF system in their citations to docket entries and exhibits.

[2]     *See* dkts. 17-18.

[3]     *E.g.*, dkt. 137 at 14.

GTL made to the IVR script during the relevant time period. Plaintiffs served document requests and interrogatories to that effect, asked deposition questions, and directed questions to defense counsel. In response, GTL repeatedly stated (including repeatedly under oath) that the script never changed, and that it included the "may expire" statement during the entire relevant time period.[4] GTL made similar statements to this Court, relying heavily on the "may expire" statement in its opposition to class certification.[5] Indeed, as recently as June 14, 2018, GTL represented to this Court that all class representatives would have heard the "may expire" statement and that the statement was in place when this case was filed.[6]

But as it turns out, all of these statements were false. GTL removed the "may expire" statement in January 2014—long before this case was filed, and before Plaintiff Githieya established and funded his AdvancePay account. Plaintiffs first discovered in May of 2018 that the statement had been removed, when they dialed GTL's AdvancePay IVR. Plaintiffs then demanded that GTL disclose when it removed the statement, produce complete information relating to the removal, and correct its prior false testimony and misstatements to this Court.

Surprisingly, GTL not only refused these requests—it threatened a motion for

---

[4]    *See, e.g.*, dkt. 88 at 187:13–188:10.
[5]    Dkt. 137 at 10-11, 13-14, 17, 23, 25-28, 33, 47.
[6]    Dkt. 141 at 7.

sanctions against Plaintiffs if they raised this issue with the Court.[7] And when Plaintiffs did seek Court intervention, GTL opposed any further production of information by, once again, falsely contending that the "may expire" statement was in effect throughout the relevant time period and that all relevant documents had been produced.[8] In oral argument, GTL even suggested that there was only one person at GTL who knew about changes to its IVR script—and that he was dead.[9] That was also false. GTL removed the "may expire" statement from the AdvancePay IVR after an intensive, three-months-long deliberative process involving not just one employee, but rather nearly *30*—including GTL's president and multiple other executives.[10]

Eventually, this Court ordered GTL to provide comprehensive and accurate discovery responses about removal of the "may expire" statement and reopened GTL's Rule 30(b)(6) deposition. But even then, and in violation of this Court's order, GTL ***still*** failed to provide complete responses to Plaintiffs' questions about the IVR script.[11] Indeed, when asked why GTL had withheld key evidence and had made misleading statements to Plaintiffs and this Court, GTL offered objectively false testimony—stating that the company only became "aware" that the "may expire"

---

[7]     Ex. E (Letter from GTL's counsel to Plaintiffs' counsel) at 2.
[8]     Dkt. 141 at 5-7.
[9]     Dkt. 147 at 9.
[10]    *E.g.*, dkts. 152-8, 152-9, & 152-10, *passim*.
[11]    *E.g.*, dkt. 154 at 1-3.

statement had been removed from its IVR script "after the court entered its [June 25, 2018] Order . . . ."[12] "Prior to that," GTL claimed, it "had no knowledge it had been removed."[13] But that, of course, cannot be true, since GTL's own documents show that nearly 30 employees were involved in the decision to remove the statement, including GTL's president.[14] Apparently recognizing as much, GTL sent Plaintiffs an errata sheet purporting to convert material portions of its Court-ordered corporate deposition into the personal testimony of a witness GTL now claims lacked sufficient personal knowledge.[15] Thus, GTL offered yet more evasive and inaccurate testimony in response to questions about why GTL had withheld key evidence and misled Plaintiffs and this Court in the first place.

These facts—and the more detailed facts described below—warrant serious sanctions. This Court should find that GTL's withholding of key evidence, presentation of false testimony and false statements to this Court, and recent violation of this Court's order were designed to deceive Plaintiffs and this Court. Given the severity of GTL's misconduct and the need to deter such conduct in the future, this Court should sanction GTL by striking its answer. Alternatively, this Court should enter an establishment order or strike GTL's response to Plaintiffs' motion for class

---

[12]     Dkt. 152 at 176:15–177:2.
[13]     *Id.*
[14]     *E.g.*, dkts. 152-8, 152-9, & 152-10, *passim*.
[15]     Dkt. 154 at 3.

certification. GTL should also be ordered to pay Plaintiffs' attorneys' fees.

## RELEVANT FACTS AND PROCEDURAL POSTURE

### A. GTL's IVR Scripts and Information.

Plaintiffs seek to represent a class of persons who established an AdvancePay account through GTL's IVR system from whom GTL took prepaid deposits under its "breakage" practice.[16] AdvancePay accounts are "the largest single revenue stream" for GTL, and most of GTL's AdvancePay deposits come through its IVR system.[17] The IVR system is responsible for tens of millions of dollars in annual revenue and facilitates tens of thousands of calls per day.[18]

Despite GTL's representation to the Court that there "are a number of different facilities and a number of different phone platforms and so a number of different scripts,"[19] there are actually "only three" IVR scripts through which a customer can establish an AdvancePay account.[20] The primary one—which GTL calls its "main AdvancePay IVR"—accounts for 80% of GTL's IVR business.[21] There are two

---

[16]   Dkt. 123-1 at 17; *see also* dkt. 69-1 at 14.

[17]   Dkt. 88 at 26:20-27:4, 32:9–14, 129:6–19.

[18]   Dkt. 152 at 175:11–25.

[19]   Dkt. 147 at 5:1–6.

[20]   Dkt. 152 at 29:13–17; *see also id.* at 32:6–12.

[21]   *Id.* at 26:10–15, 33:20–23, 166:7–12. GTL also has dedicated IVRs for the California and Michigan Departments of Corrections, which respectively account for approximately 15% and 5% of its AdvancePay IVR business. *Id.* at 32:17–21.

primary documents reflecting the content of the AdvancePay IVR—(i) a "Master Prompt List," which is a written list of the prompts heard by an AdvancePay customer; and (ii) a "Call Flow" document showing which prompts are played in response to customer keypad inputs. These documents are maintained in a readily accessible and central location in GTL's "Project Management Department."[22]

Each time it made a material change to its IVR script, GTL conducted an approval process that involved dozens of personnel, including the company's president and other executives.[23] This process generated multiple documents, including "approval" documents detailing the change and the process undertaken to implement it,[24] a revised "Master Prompt List,"[25] and an updated "Call Flow" document.[26] Once the Court ordered GTL to produce all information regarding removal of the "may expire" statement, it took GTL just a few days to collect and produce these key documents.[27] Despite Plaintiffs' discovery requests and GTL's representations to the contrary, GTL did not produce these documents for the relevant

---

[22]    *Id.* at 57:6–59:13, 66:2–67:23.

[23]    *Id.* at 78:1–80:25, 87:11–93:8, 94:16–24; *see also* dkt. 152-8 at 1–2; dkt. 152-10 at 1–3.

[24]    *E.g.*, dkt. 152 at 15:6–16:17, 80:17–84:7, 86:19–87:18; *see also* dkt. 152-09 at 1–3.

[25]    *E.g.*, dkt. 152 at 66:2–67:16.

[26]    *E.g.*, *id.* at 86:3–22; *see also id.* 14:17–22, 58:10–25; dkt. 152-4 *passim*.

[27]    Dkt. 152 at 17:7–18:16, 67:18–68:24.

time period until after the close of discovery and after the Court ordered it to do so.[28]

### B. In 2015, GTL relied on the call script to request arbitration.

From the outset of this litigation, GTL has been aware that the IVR call script would be of central focus. In its very first motion, GTL sought arbitration based upon the (ultimately unsuccessful) contention that Plaintiff Githieya assented to a statement in its call script regarding GTL's terms and conditions.[29] In support of that motion, GTL told this Court under oath that it had reviewed the pertinent IVR call script.[30] In addition, during the period relevant to this case, there were at least four other federal lawsuits in which GTL's AdvancePay IVR script was, to some extent, at issue.[31] GTL should thus have been aware of the need to gather accurate and complete information regarding the IVR script for production in this litigation, as well as other lawsuits.

### C. In 2017, GTL produced an obsolete 2010 call script and falsely testified under oath that the script did not change.

Plaintiffs served discovery relating to the IVR script as soon as discovery opened. On May 26, 2017, Plaintiffs asked for "[c]opies of all iterations of [GTL's]

---

[28]   *Id.* at 57:2–58:9, 142:25–144:21, 161:12–163:7.
[29]   *See* dkts. 17-18.
[30]   Dkt. 18 ¶ 3.
[31]   *E.g., James et al. v. Global Tel\*Link Corp. et al.*, No. 13-cv-4989 (D.N.J., filed Aug. 20, 2013); *Chruby et al. v. Global Tel\*Link Corp.*, No. 13-cv-456 (E.D. Va., filed Apr. 24, 2014); *Stuart et al. v. Global Tel\*Link Corp.*, No. 14-05275 (W.D. Ark. Sep. 4, 2014); *Jacobs et al. v. Global Tel\*Link Corp.*, No. 15-cv-5136 (W.D. Ark., filed June 12, 2015).

interactive voice response (IVR) telephone system recordings," "[a]ll documents showing or reflecting the dates your IVR telephone system recordings were used and in effect," and "[a]ll [d]ocuments related to any changes made to your IVR telephone system recordings."[32] In response, the very first document GTL produced (Bates-labeled GTL_Githieya_0000001) was the "2010 Master Prompt list," an AdvancePay call script which purported to include a comprehensive set of the prompts callers to the IVR would hear, depending on which buttons they press.[33] The 2010 Master Prompt List included the "may expire" statement.[34]

The parties scheduled GTL's Rule 30(b)(6) deposition to take place in mid-September 2017. In August of 2017, Plaintiffs asked GTL to confirm it had produced (or would produce) all IVR scripts in advance of the deposition.[35] GTL responded that it "understood [Plaintiffs'] need to have these documents . . . , and [was] working to locate and produce those documents to you in a timely manner."[36] GTL never objected nor informed Plaintiffs it was withholding any such scripts.

After receiving GTL's production, Plaintiffs took the Rule 30(b)(6) deposition

---

[32]     Ex. A at 9 (Requests 26–28).
[33]     Plaintiffs filed the 2010 Master Prompt List as Exhibit 19 to their motion for class certification. *See* dkt 123-21 at 2.
[34]     Dkt. 123-21 at 3.
[35]     Ex. B at 2-5.
[36]     *Id.*

of GTL on September 14, 2017.[37] GTL's corporate representative, John Baker,

testified that in preparation for the deposition, he had reviewed GTL's AdvancePay

call script.[38] Plaintiffs marked the 2010 Master Prompt List as an exhibit and asked

Mr. Baker if there had been any "changes [to the script] that [GTL] would deem

material to our discussion today?"[39] GTL's counsel interrupted to add, "as it relates to

inactivity"—making clear that GTL understood the question to ask specifically about

changes to the script relating to the "may expire" statement.[40] Mr. Baker responded

that there had been no such changes.[41] Plaintiffs then asked, again, if the 2010 Master

Prompt List "is the script that GTL used during the relevant time period of this case;

correct?" GTL responded: "Yes. Correct."[42]

To ensure that they also received a sworn response in writing, Plaintiffs then

served an interrogatory asking GTL to "identify each date on which GTL made any

change, modification, alteration, or amendment of any kind to" its "call scripts for

[its] IVR system . . . ."[43] GTL's response, verified by Mr. Baker, simply identified

---

[37]   Dkt. 88 at 1.
[38]   *Id.* at 28:20–29:1.
[39]   *Id.* at 186:11–188:6.
[40]   *Id.* 88 at 188:4–10.
[41]   *Id.* at 187:13–188:10.
[42]   *Id.* at 195:15–22.
[43]   Ex. C at 13-14 (Interrogatory 20).

several documents.[44] Consistent with Mr. Baker's earlier corporate testimony, none of those documents showed any change to the AdvancePay IVR script.[45]

Plaintiffs then took the deposition of GTL's second Rule 30(b)(6) witness. Once again, GTL testified that the 2010 Master Prompt List was the operative IVR script during the entire period relevant to this case. Specifically, Plaintiffs asked whether GTL "recall[ed] anything significant changing about the IVR script that was used to communicate with customers about setting up an AdvancePay account," and GTL's witness testified the same script had been in place "forever."[46]

### D. GTL opposed class certification, relying on misleading assertions that class members heard the "may expire" statement.

Relying upon GTL's testimony, document productions, and sworn discovery responses, Plaintiffs moved for class certification on April 13, 2018.[47] GTL responded on May 25, 2018, arguing that the "may expire" statement in its IVR script meant Plaintiffs' "theory of liability is not susceptible to class treatment . . . ."[48] Indeed, in the ***first paragraph*** of its response, GTL argued class certification should be denied because "the automated telephone script . . . expressly discloses the

---

44   *Id.* at 12-14.
45   *Id.*; *see also* Ex. I (Declaration of T. Brandon Waddell) ¶ 7.
46   Dkt. 87 at 78:21–79:10.
47   *See* dkt. 122 & 123-1.
48   Dkt. 137 at 23.

inactivity policy . . . ."[49] That is the central theme of GTL's response, repeated at least ten times with at least five citations to the 2010 Master Prompt List.[50] Remarkably, GTL did not disclose that the "may expire" statement had been removed in January 2014, and therefore that Plaintiff Githieya and many (if not most) class members would not have heard it.[51]

> ### E. Plaintiffs discovered that the "may expire" statement had been removed and alerted GTL to that fact, but GTL continued to mislead Plaintiffs and the Court.

After filing their motion for class certification, Plaintiffs learned that, despite GTL's testimony and statements throughout discovery, the "may expire" statement was no longer part of GTL's IVR script. On May 29, 2018, Plaintiffs sent GTL a letter asking when the "may expire" statement had been removed, and they later provided GTL a copy of the recording Plaintiffs' counsel made demonstrating the "may expire" statement's removal.[52]

But GTL refused to answer Plaintiffs' question and refused to correct the statements in its class-certification opposition brief about the "may expire"

---

[49]    *Id.* at 10 (emphasis in original).
[50]    *Id.* at 10–11, 13–14, 17, 23, 25–28, 33, 47.
[51]    *See* Ex. H at 7.
[52]    Ex. D. In April 2018, Plaintiffs' counsel called GTL's automated deposit system and discovered that the "may expire" statement was not played when one established and funded an AdvancePay account. Ex. J. Plaintiffs have submitted a copy of this audio recording contemporaneous with this Motion.

statement.[53] Instead, GTL accused Plaintiffs' counsel of violating Georgia's Rules of Professional Conduct and asserted that, if Plaintiffs raised this issue with the Court, it would "seek[] sanctions [against Plaintiffs] for a frivolous filing."[54] GTL also, for the first time, identified GTL_Githieya_0000778 (along with 36 other documents), which Plaintiffs provided to the Court on June 21, 2018.[55] But as the Court observed, that document was indecipherable in the format in which GTL originally produced it.[56]

Plaintiffs responded by noting that it appeared "GTL ha[d] failed to produce its most recent version of the IVR master script—[or], for that matter, any prior script that was modified to exclude" the "may expire" statement.[57] And Plaintiffs asked again: "When did GTL amend the Automated AdvancePay IVR script associated with establishing and funding an account on th[e] IVR system to exclude the ["may expire" statement] quoted above?"[58] Again, GTL refused to answer, instead referring back to the "778" document.[59] Plaintiffs responded by asking GTL to produce "the native excel file . . . so that we can review that document."[60] And Plaintiffs asked for

---

[53]     Ex. E at 2-4.
[54]     *Id.* at 2.
[55]     *See* Ex. F at 3.
[56]     *See* dkt. 147 at 15:23–16:1.
[57]     *See* Ex. G at 4.
[58]     *See id.*
[59]     *Id.* at 3.
[60]     *Id.* at 2–3.

a third time: "When did GTL amend the 'Automated AdvancePay' IVR script associated with establishing and funding an account to exclude" the "may expire" statement?[61] Once again, GTL refused to answer Plaintiffs' question.[62]

### F. Plaintiffs raised the issue of GTL's discovery misconduct, and GTL made objectively false statements to the Court.

Because GTL continued to refuse to answer Plaintiffs' question about the date on which the "may expire" statement had been removed, to produce complete information relating to the removal, or to reopen the Rule 30(b)(6) deposition of GTL, Plaintiffs sought court intervention. On June 14, 2018, the parties filed a joint statement with the Court addressing these issues. For its part, GTL stated to the Court that "each of the named Plaintiffs would have heard the inactivity prompt . . . ."[63] GTL has since admitted that statement was false.[64] GTL also asserted "that the inactivity prompt did not change from 2009 through the date of the Complaint," although it has refused to admit (despite all the evidence to the contrary) that this statement was also false.[65]

---

[61]  *Id.* at 3.
[62]  Ex. G at 2. GTL produced a native copy of the "778" spreadsheet, which Plaintiffs provided to the Court on June 21.
[63]  Dkt. 141 at 7.
[64]  Dkt. 151 at 1.
[65]  Dkt. 141 at 7; dkt. 152 at 159:4–160:20.

On June 25, 2018, the Court held a telephonic hearing on the parties' dispute. During the hearing, GTL claimed its responses to Plaintiffs' requests about the script "were not inaccurate."[66] GTL further stated (i) that it had "provided the master list for prompts," (ii) that it had conducted "an extensive search and provided all" documents related to changes to the IVR, (iii) that there was "nothing else that we can provide . . . that hasn't already been provided," and (iv) that any renewed Rule 30(b)(6) witness "would be relying on the same documents that [were already] in plaintiffs' possession."[67] These statements also turned out to be false.

### G. GTL's Court-ordered document production confirmed its statements were false and that it failed to comply with its discovery obligations.

Shortly after the Court ordered GTL to produce documents relating to changes to its IVR, GTL admitted for the first time that the "may expire" statement had been removed on January 7, 2014.[68] Also for the first time, GTL disclosed a series of documents showing removal of that statement. For example, GTL finally produced the 2014 Master Prompt List that was in place when Mr. Githieya established and funded his AdvancePay account, as well as the Master Prompt List in place since

---

66    Dkt. 147 at 8:23–24.
67    *Id.* at 9:11, 9:16–18, 10:8–12, 14:23–25.
68    Ex. H at 7.

14

2016.[69] Similarly, GTL disclosed the "Call Flow" charts that were in place before Mr. Githieya established his account, which also show that the "may expire" statement had been removed. All of these documents were responsive to Plaintiffs' May 2017 discovery requests, but GTL did not produce any of them until July 10, 2018.[70]

GTL also produced, for the first time, emails revealing that GTL removed the "may expire" statement from the AdvancePay IVR after an ***intensive, three-months-long deliberative process involving nearly 30 GTL employees***—including the company president and other company executives.[71] For example, the document GTL now acknowledges shows that "the inactivity prompt [was deleted from] GTL's main AdvancePay IVR" by January 7, 2014[72] is an email received by more than two dozen individuals, including Mr. Baker and GTL's president.[73] Based on the ESI search protocols to which the parties agreed, that email should have been produced during discovery.[74] Similarly, based on an email between Mr. Baker and other executives, GTL testified that, by October 8, 2013, it had "begun discussing the change" that removed the "may expire" statement from its IVR script.[75] That email also should

---

[69]     *See* dkts. 152–6 & 152–7; *see also* dkt. 152 at 75:7–12.
[70]     *Id.* at 59:23–60:13, 142:25–143:7, 162:18–163:7, 163:25–165:18.
[71]     *E.g.* dkts. 152-8, 152-9, & 152-10, *passim*.
[72]     *Id.* at 26:5–15; *see also* Ex. H at 6.
[73]     Dkt 152-10 at 1–3.
[74]     Ex. I ¶¶ 14–18.
[75]     Dkt. 152 at 78:1–6.

have been captured by the agreed-upon ESI search protocols and produced during discovery.[76] At the Court-ordered Rule 30(b)(6) deposition, GTL could not explain why these documents were not produced during discovery.[77]

### H. At the Court-ordered Rule 30(b)(6) deposition, GTL confirmed it made false and misleading statements, yet it offered additional demonstrably false testimony.

On July 19, 2018, GTL sat for its Court-ordered 30(b)(6) deposition. GTL ultimately admitted it had made false statements to the Court: "Q: Any assertion to the Court that Mr. Githieya heard the inactivity prompt when he established and funded his account would be false correct? A: Correct."[78]

GTL also admitted that there are "only three" IVR scripts through which a customer can establish an AdvancePay account, and the script Plaintiffs had repeatedly asked about (but about which GTL had feigned ignorance) is the "main AdvancePay IVR," which accounts for approximately 80% of its IVR business.[79]

But GTL was evasive on other issues—particularly as it related to its prior discovery misconduct and false testimony. For example, GTL insisted its statement to the Court that "the inactivity prompt did not change from 2009

---

[76]    Ex. I ¶¶ 9–13.

[77]    Dkt. 152 at 144:11–21, 145:12–146:5; *see also id.* at 162:14–163:7.

[78]    *Id.* at 165:15–18; *see also id.* at 164:4–165:14.

[79]    *Id.* at 33:20–23, 166:7–12; *see also id.* at 29:13–17, 30:7–12, 32:6–12, 69:6–9, 76:16–19, 86:12–13, 113:21–23.

through the date of the Complaint" was "accurate." According to GTL, that statement is accurate because "[t]he file exists and continues to exist, just that . . . we stopped playing it on January of 2014."[80]

Indeed, GTL appears to have prepared its 30(b)(6) witness in order to avoid answering questions about its discovery misconduct and prior false statements. Mr. Montanaro testified that he did not talk to Mr. Baker in preparation for the deposition, even though Mr. Baker had provided prior false testimony regarding the IVR script in this case. And Mr. Montanaro admitted the IVR script was Mr. Baker's "job"[81]—"[h]e was the Executive with decision-making capacity for the AdvancePay product, and the IVR" and would have been one of the people with "the best or the most knowledge of changes to the IVR" in 2014.[82] In fact, Mr. Montanaro only spoke with four mid-level employees before his deposition.[83] Perhaps not surprisingly, given that level of preparation, he testified that "nobody could provide an explanation as to why the inactivity element of the prompt was removed."[84]

---

[80]   Dkt. 152 at 159:4–160:20. *Compare id.* at 119:10–18 (conceding the prompt "has [not] existed in the main IVR" since January 2014).
[81]   *Id.* at 104:21–25.
[82]   *Id.* at 104:21–25, 169:19–23, *see also id.* at 50:16–24.
[83]   *Id.* at 21:3–10.
[84]   *Id.* at 23:21–23, *see also id.* at 107:7–10.

When pressed on why GTL had withheld documents and offered false testimony, Mr. Montanaro testified that "no one at GTL was aware that the inactivity prompt no longer played" on the main AdvancePay IVR until **after** this Court's June 25, 2018 Order.[85] Indeed, Mr. Montanaro repeatedly testified—even at his own counsel's prompting—that it was "only within the past 30 days that we learned" the "may expire" prompt was removed and that, prior to that date, "***no one at GTL was aware of the fact that they removed the ['may expire'] prompt [for] over four years [until] after the Court entered its Order in this case on June 25, 2018***[.]"[86]

That testimony is objectively false. GTL's records show that the decision to remove the "may expire" statement was a "Top Priority" that was discussed in email exchanges with almost 30 GTL personnel, including GTL's president and other executives.[87] GTL's records also show that company personnel called to test the IVR after the "may expire" statement was removed, reporting the results of their tests to even more GTL personnel.[88] At the most basic level, it is incomprehensible that not a single GTL employee would know the contents

---

[85]   *Id.* at 170:17–21, 172:15-23, 173:13–22.

[86]   *Id.* at 164:24–166:5, 176:15–177:2 (emphasis added).

[87]   Dkt. 152-10 at 1–3; *see also* dkt. 152 at 96:18–97:10; dkt. 152-4 at 2–12.

[88]   Dkt. 152 at 84:3-12 & dkt. 152-9.

of an IVR script that is "responsible for the generation of tens of millions of dollars in revenue for GTL every year," "facilitates thousands of calls a day," and is "heard by anyone who either dials the 1-800 number or receives a call from any institution" GTL services nationwide.[89]

Following the 30(b)(6) deposition, GTL's outside counsel—apparently recognizing GTL's claim of corporate-wide memory loss was indefensible—submitted an errata sheet attempting to convert this portion of the deposition from corporate testimony to personal testimony.[90] GTL asserted these changes were necessary due to "the limitations of the witness's knowledge."[91] That conduct violated this Court's order requiring GTL to offer a prepared 30(b)(6) witness to testify about "[a]ny changes made to the AdvancePay . . . script . . . and information related to such changes" and "[a]ny information and documents that relate to when the 'may expire' statement was removed."[92] Having abandoned Mr. Montanaro's false claim of corporate-wide ignorance, it is apparent that GTL would prefer to remain silent on why it withheld key

---

[89]    *Id.* at 175:11–176:7.
[90]    *See* dkt. 145 at 1 (permitting Plaintiffs "to reopen the Rule 30(b)(6) deposition of Defendant"); dkt. 154 at 1–3 (changing "we" answers to "I" answers and unqualified statements to statements "[i]n my personal opinion").
[91]    Dkt. 154 at 3.
[92]    Dkt. 145 at 1–2.

evidence relating to changes it made to its IVR script, offered inaccurate

deposition testimony, and misled Plaintiffs and this Court.

## ARGUMENT AND CITATION TO AUTHORITY

### A. This Court should sanction GTL because it has conducted discovery in bad faith and has perpetrated a fraud on this Court.

"[F]ederal courts possess the inherent power to sanction parties and attorneys

who conduct litigation in bad faith or who perpetrate fraud on the court." *Qantum*

*Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1268 (S.D. Fla. 2007)

(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–51 (1991)). The "purposes of

[such] sanction[s] include 1) compensating the court and other parties for the added

expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others

from engaging in similar conduct; and 4) penalizing the guilty party or attorney."

*Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir. 1985).

"To impose sanctions under [its] inherent powers, the court first must find bad

faith." *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008). "A finding of bad faith is

warranted where an attorney knowingly or recklessly raises a frivolous argument . . .

." *Id.* (internal quotation marks omitted); *see also Latele Television, C.A. v.*

*Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2014 WL 5816585, at *11

(S.D. Fla. Nov. 10, 2014) ("[R]eckless conduct constitutes the requisite bad faith to

justify sanctions under the Court's inherent power."). "Bad faith exists when the court

finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled' . . . ." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (quoting *Chambers*, 501 U.S. at 46).

Here, GTL's actions show that it has conducted discovery in bad faith and has perpetrated a fraud on this Court. GTL began its "unrelenting campaign to obfuscate the truth" by failing to produce, in response to Plaintiffs' May 2017 discovery requests, key documents showing that the "may expire" statement had been removed from the main IVR script in January 2014.[93] *Bates v. Michelin N. Am., Inc.*, No. 1:09-CV-3280-AT, 2012 WL 453233, at *20 (N.D. Ga. Jan. 13, 2012) (Totenberg, J.). Then, at two Rule 30(b)(6) depositions, GTL repeatedly testified that there were no material changes to the IVR call scripts—and that the "may expire" statement was part of the IVR script for the entire time period relevant to this case.[94] Next, in response to Plaintiffs' October 2017 interrogatory seeking the dates of any changes to the IVR scripts, GTL misleadingly identified several documents that failed to show any change to the scripts.[95] GTL's deposition testimony and interrogatory responses were "so knowingly incomplete and misleading that it constituted perjury as well as fraud . . . ." *In re Amtrak "Sunset Ltd." Train Crash*, 136 F. Supp. 2d 1251, 1258

---

[93]    *See supra* footnotes 34–36, 54-79 and accompanying text.
[94]    Dkt. 87 at 78:21–79:10; dkt. 88 at 187:13–188:10; 195:15–22.
[95]    Ex. C at 13-15.

(S.D. Ala. 2001), *aff'd*, 29 F. App'x 575 (11th Cir. 2001).

Following discovery, GTL perpetrated a fraud on this Court by relying heavily on its own false statements about the "may expire" statement to oppose class certification.[96] *See Qantum Commc'ns Corp.*, 473 F. Supp. 2d at 1278; *see also Forsberg v. Pefanis*, 261 F.R.D. 694, 701–02 (N.D. Ga. 2009), *aff'd* 634 F. App'x 676 (11th Cir. 2015) (explaining that seeking a ruling based on a false or misleading assertion constitutes a fraud on the court). When Plaintiffs' counsel alerted GTL to its false testimony and statements about the "may expire" statement, GTL did not attempt to correct the record or discover the truth. Instead, GTL doubled-down by continuing to make false statements, threatening sanctions against Plaintiffs' counsel, and refusing to reveal when the script was altered until this Court ordered it to do so. Even then, GTL's 30(b)(6) witness was not prepared to answer basic questions about the IVR scripts and the discovery process in this case, even making the preposterous claim that "no one at GTL was aware" of the removal of the statement until after the Court issued its compulsion order.[97] GTL's testimony did, however, reveal that documents relating to removal of the "may expire" statement from the IVR script were readily available to GTL and should easily have been produced in discovery, and that many people within GTL (including the company's president) knew of the

---

[96]    Dkt. 137 at 10-11, 13-14, 17, 23, 25-28, 33, 47.
[97]    *See supra* notes 54-96 and accompanying text.

22

script change.

Each of these actions would independently deserve sanction. When viewed together, there can be little doubt that GTL engaged in bad faith and perpetrated a fraud on this Court by lying about and concealing the fact that the "may expire" statement was removed from that script years ago. *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001) ("A false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose."). This Court should sanction GTL.

### B. The Court should strike GTL's Answer.

#### 1.   The Court has authority to strike GTL's answer.

"[A] district court has the inherent power to strike an answer and enter a default judgment when a party willfully obstructs the litigation process in bad faith." *Griffin v. New Prime Inc.*, No. 1:10-CV-01228-WSD, 2014 WL 212537, at *3 (N.D. Ga. Jan. 13, 2014). "[W]hen a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities," as GTL has done here, "the district court's choice of [such an] extreme sanction . . . is not an abuse of discretion." *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976).[98] "[T]he need for sanctions is

---

[98]   *See also Michaud v. U.S. Steakhouse Bar & Grill, Inc.*, No. 6:04-cv-1371-Orl-UAM, 2007 WL 2155570, at *2 (M.D. Fla. July 25, 2007) ("When the non-compliant party demonstrates 'a flagrant disregard for the court and the discovery process,' . . . the 'severe' sanction [of striking a pleading] is not an abuse of discretion." (quoting

heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case."
*Qantum Commc'ns Corp.*, 473 F. Supp. 2d at 1269. Indeed, appellate courts have affirmed sanctions like dismissal or entry of default where, as is true here, a party "repeatedly and pointedly lied under oath regarding *the* pivotal issue in [the] case and [then] changed [its] story only after" being caught. *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (emphasis in original). In striking GTL's answer, this Court need only find that any "lesser sanction would be ineffective."[99]

As this Court has already observed, the contents of GTL's IVR script is "the centerpiece issue in this lawsuit . . . ."[100] Yet GTL has "repeatedly and pointedly lied under oath regarding" that script, "chang[ing] [its] story only after" being caught. *Nichols*, 949 F.2d at 1049. As detailed above, GTL withheld documents showing that the "may expire" statement had been removed, repeatedly made false statements under oath, doubled-down on its false statements to this Court by falsely representing that it had produced all responsive documents, and falsely claiming the only person with responsive knowledge at GTL was dead. GTL then attempted to cover up its

---

*Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982)).

[99]      *U.S. v. One 32' Scorpion Go-Fast Vessel*, 339 F. App'x 903, 905 (11th Cir. 2009) ("A district court does not abuse its discretion in dismissing a claim under Rule 37(b) if it finds that a party willfully failed to comply with the opposing party's discovery request, even if we would have imposed a lesser sanction.").

[100]      Dkt. 147 at 8:16–18.

misconduct by giving more false testimony about its supposed lack of knowledge relating to the removal of the "may expire" statement. This conduct alone justifies striking GTL's answer.[101]

The imposition of the "ultimate sanction" is further justified here because GTL violated this Court's June 26, 2018 Order. The Court ordered GTL to produce a Rule 30(b)(6) witness prepared to testify about "[a]ny changes" to its IVR script and any "information related to such changes," as well as "[a]ny information . . . that relate[s] to when the 'may expire' statement was removed."[102] But Mr. Montanaro was not able to testify about even basic facts on these points, like when GTL learned that the "may expire" statement had been removed, how GTL found out, or why the statement was removed. And after GTL was caught attempting to cover up its prior misconduct with a false claim of ignorance, GTL attempted to convert Mr. Montanaro's answers from corporate to personal testimony using an errata sheet. Where, as here, "a pattern of conduct that show[s] disrespect for the court's rules" is coupled with a "bad faith failure to comply with a discovery order," a default judgment is an appropriate sanction. *Maus v. Ennis*, 513 F. App'x 872, 878–79 (11th Cir. 2013).

### 2.    GTL's conduct has prejudiced Plaintiffs and the class.

---

[101]    *See Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1406 (S.D. Ga. 1998) (striking answer and entering default judgment after defendant repeatedly lied under oath and produced misleading documents); *see also Qantum Commc'ns Corp.*, 473 F. Supp. 2d at 1269.

[102]    Dkt. 145 at 2.

GTL's violation of the Court's order, as well as its false testimony and statements to Plaintiffs and the Court, has resulted in significant prejudice to Plaintiffs. GTL has deprived Plaintiffs of corporate testimony about the removal of the "may expire" prompt. Discovery is closed, so Plaintiffs cannot—and, at this point, should not be required to—develop new evidence to understand why GTL removed the "may expire" prompt.[103] Because the "may expire" statement is a central issue in this case, the lack of competent testimony from GTL about the statement prejudices Plaintiffs' case. "[T]he extraordinary nature of [GTL's] actions coupled with [this] extreme prejudice . . . warrants [striking its answer]." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005).

The "ultimate sanction" is also appropriate here because it "addresses not only prejudice suffered by [Plaintiffs], but . . . vindicates the judicial system as a whole, for such misconduct threatens the very integrity of courts, which otherwise cannot command respect if they cannot maintain a level playing field amongst participants." *Chemtall, Inc.*, 992 F. Supp. at 1409. No sanction other than default will adequately punish GTL's misconduct or ensure that future parties are not tempted to profit from

---

[103] *See In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, No. 3:05–MD–527 RM, 2010 WL 779322, at *2 (N.D. Ind. Feb. 23, 2010) (imposing sanctions and finding incurable prejudice where "[i]t is simply not possible to re-open discovery at this late date because it would unreasonably delay the resolution of class certification . . . .").

the pattern of false testimony and withholding of evidence that GTL engaged in here.

*See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993).

### C. Alternatively, this Court should establish the terms of the class members' contracts and preclude GTL from arguing that any Plaintiff or class member agreed to its inactivity policy.

In the alternative, this Court should enter an order establishing the terms of GTL's contracts with the class members as those set out in Plaintiffs' class-certification motion, thus excluding the "may expire" statement from evidence. GTL's decision to hide the fact that the "may expire" statement was removed from the main IVR script in January of 2014 (and that, as a result, many or most of the putative class members would never have heard it) should prevent GTL from relying upon that statement at all.

Other courts have found such orders to be appropriate in cases where a party made false statements about an important issue. For example, after making a "factual finding that [a defendant's representative] made a knowing, false statement to the Court," one court "deemed [certain facts] established," including the terms of the plaintiffs' employment relationships with that defendant. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1297, 1301 (S.D. Fla. 2007). Similarly, this Court found in *Bates* that "a determination that the tire at issue . . . is defective and unreasonably dangerous [was] an appropriate sanction to remedy the discovery abuses perpetrated by [the defendant] in bad faith and in disregard of this Court's

prior discovery Orders." 2012 WL 453233, at *21 (Totenberg, J.). There, as here, "the defendant made multiple misrepresentations to the Court that it had produced documents" and sought to evade the Court's order with unjustifiable responses. *Id.*

GTL's abuses here were even more egregious than those in *Bates*. Not only did GTL fail to produce the documents that would have shown the "may expire" statement was removed long before this case was filed, and not only did GTL mislead the Court about that fact, but GTL also made false and misleading statements under oath at deposition and in its sworn interrogatory responses. As the Georgia Court of Appeals observed in a recent decision:

> An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is *worse* than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer . . . . The obstruction to the discovery process is much graver when a party denies having the requested information than when the party refuses to respond . . . .

*Res. Life Ins. Co. v. Buckner*, 698 S.E.2d 19, 34 (Ga. Ct. App. 2010) (internal quotation marks and alteration omitted).[104] That court affirmed a discovery sanction

---

[104]    *Resource Life Insurance* has been cited with approval by multiple federal courts. *See, e.g., Small v. Univ. Med. Ctr. of S. Nevada*, No. 2:13-CV-00298-APG, 2014 WL 4079507, at *36–37 (D. Nev. Aug. 18, 2014) (recommending establishment of several facts leading to certification of class as a discovery sanction); *see also Ford*

establishing facts showing the defendants had breached their contracts with class members. *Id.* at 27. This Court could enter a similar order here, by establishing the terms of GTL's contracts with the class members and precluding GTL from relying on the "may expire" statement in this case.

### D. Alternatively, this Court should strike GTL's response to Plaintiffs' motion for class certification.

This Court could also exercise its discretion by striking GTL's brief opposing class certification. A court "may strike an affidavit or brief as a sanction for noncompliance with court orders, violations of applicable rules, or other misconduct." *English v. CSA Equip. Co., LLC*, No. 05-0312-WS-B, 2006 WL 2456030, at *2 n.5 (S.D. Ala. Aug. 22, 2006) (citing *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002)). GTL's brief opposing class certification is laced with misleading and false references to the "may expire" statement. This Court could therefore strike GTL's brief in its entirety. *See Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-CIV, 2014 WL 11531638, at *2-*4 (S.D. Fla. July 15, 2014) (striking Response to Plaintiff's Motion for Partial Summary Judgment where Defendants "intercepted privileged communications and [committed] discovery violations").

---

*Motor Co. v. Conley*, 294 Ga. 757 S.E.2d 20, 32 (Ga. 2014) (quoting same language); *Vigil v. Stone*, No. CV 10-947 LFG/WDS, 2011 WL 13277211, at *9 (D.N.M. Dec. 5, 2011) (quoting same language).

### E. GTL should also be ordered pay the fees Plaintiffs incurred in their months-long effort to discover the terms of GTL's IVR script.

No matter what substantive sanction the Court decides to impose, the Court should also order GTL to reimburse Plaintiffs for all attorneys' fees and expenses they incurred in connection with seeking—since the beginning of discovery in this matter—to determine the complete contents of the IVR script. Plaintiffs incurred considerable time and expense investigating and seeking to piece together information that, according to GTL's Court-ordered Rule 30(b)(6) witness, took GTL a single phone call to determine.[105] And GTL has offered no excuse for its deliberate failure to comply with its discovery obligations. GTL should be required to reimburse Plaintiffs for their fees and expenses associated with determining the contents of the IVR scripts. If the Court concludes Plaintiffs are entitled to those fees and expenses, Plaintiffs will submit their time sheets and invoices associated with that work.

### CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court grant this Motion and sanction GTL in a manner that is proportionate to the gravity of GTL's misconduct and that deters GTL and other parties from engaging in similar conduct in the future. Plaintiffs respectfully submit that the appropriate sanction in this case is striking of GTL's answer and awarding attorneys' fees.

---

[105]   Dkt. 152 at 172:19–173:12.

Respectfully submitted this 28th day of August, 2018.

/s/ Michael A. Caplan
Michael A. Caplan
James W. Cobb
T. Brandon Waddell
Sarah Brewerton-Palmer
Ashley C. Brown
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com
jcobb@caplancobb.com
bwaddell@caplancobb.com
spalmer@caplancobb.com
abrown@caplancobb.com

James Radford
Georgia Bar No. 108007
**RADFORD & KEEBAUGH, LLC**
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com

*Counsel for Plaintiffs and the Proposed Class*

31

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that the foregoing document has been

prepared with one of the font and point selections approved by the Court in

LR 5.1(B).

This 28th day of August, 2018.

/s/ Michael A. Caplan
Michael A. Caplan
Georgia Bar No. 601039
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record, including:

| | |
|---|---|
| Michael R. Sklaire | Michael J. King |
| **GREENBERG TRAURIG LLP** | **GREENBERG TRAURIG LLP** |
| 1750 Tysons Boulevard, Suite 1000 | Terminus 200 |
| McLean, Virginia 22102 | 3333 Piedmont Road NE, Suite 2500 |
| sklairem@gtlaw.com | Atlanta, GA 30305 |
| | kingm@gtlaw.com |

This 28th day of August, 2018.

/s/ Michael A. Caplan
Michael A. Caplan
Georgia Bar No. 601039
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com

33