## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| BENSON GITHIEYA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>GLOBAL TEL*LINK CORP.,<br><br>    Defendant. | CIVIL ACTION NO:<br>1:15-CV-00986-AT |

## THIRD AMENDED CLASS ACTION COMPLAINT

Pursuant to this Court's September 7, 2018 Order granting Plaintiffs leave to amend their complaint, dkt. 170 at 14-15 & n.7, Plaintiffs Benson Githieya, Darlene Byers, and Nellie Lockett ("Plaintiffs") hereby file their Third Amended Class Action Complaint. Consistent with the Court's Order, the only allegations that have been added or amended appear in Count III, which sets forth Plaintiffs' claim under the Federal Communications Act ("FCA"). No other allegations have been altered, added, or removed.[1]

---

[1] Because the Court's Order granting leave to amend relates solely to Plaintiffs' FCA claim, Plaintiffs have not modified or deleted the allegations relating to former Plaintiff Kate Boccia. But Ms. Boccia's claims were dismissed by consent order, dkt. 126, and Plaintiffs do not seek to reassert any direct claim on Ms. Boccia's behalf. Plaintiffs have also filed contemporaneously herewith a notice providing additional context for this complaint amendment. *See* dkt. 179.

## INTRODUCTION

This is a proposed class action brought on behalf of all persons who established and funded a prepaid account through GTL's interactive-voice-response ("IVR") system and suffered loss as a result of GTL's policy of taking prepaid funds after a period of inactivity. Plaintiffs allege that GTL's policy of taking prepaid funds after a period of inactivity (i) breaches GTL's contracts with its customers; (ii) constitutes unjust enrichment; and (iii) violates the Federal Communications Act ("FCA") and its implementing regulations. Plaintiffs seek to recover all funds taken by GTL as a result of its inactivity policy and to permanently enjoin GTL's illegal practice. Plaintiffs also seek attorneys' fees, expenses, and other appropriate relief.

## PARTIES

1.      Plaintiff Benson Githieya is a resident of DeKalb County, Georgia.

2.      On or about March 12, 2014, using GTL's automated "IVR" telephone system, Mr. Githieya opened and funded an "AdvancePay" account using GTL's automated IVR system.

3.      Mr. Githieya suffered loss as a result of GTL's policy of taking prepaid funds after a period of inactivity.

4.      Plaintiff Kate Boccia is a resident of Fulton County, Georgia.

5.      Ms. Boccia is an advocate on behalf of friends and families of incarcerated persons and is the founder of a nonprofit dedicated to addressing the hardships imposed on the loved ones of people in prison.

6.      On or about March 9, 2011, using GTL's IVR system, Ms. Boccia opened and funded an AdvancePay account with GTL to communicate with her son, who was incarcerated.

7.      Over the course of the next several years, Ms. Boccia added funds to her AdvancePay account through GTL's IVR system.

8.      Ms. Boccia suffered loss as a result of GTL's policy of taking prepaid funds after a period of inactivity.

9.      Plaintiff Darlene Byers, a mother and grandmother, is a resident of Carroll County, Georgia.

10.     On or about November 2, 2011, using GTL's IVR system, Ms. Byers opened and funded an AdvancePay account with GTL to communicate with her son, who was incarcerated.

11.     Over the course of the next several years, Ms. Byers added funds to her AdvancePay account through GTL's IVR system.

12.     Ms. Byers suffered loss as a result of GTL's policy of taking prepaid funds after a period of inactivity.

13.    Plaintiff Nellie Lockett is a resident of Dekalb County, Georgia.

14.    Ms. Lockett is a church elder whose ministry focuses on community outreach.

15.    On or about November 2, 2011, using GTL's IVR system, Ms. Lockett opened and funded an AdvancePay account with GTL to communicate with members of her community and with family members who were incarcerated.

16.    Ms. Lockett suffered loss of as a result of GTL's policy of taking prepaid funds after a period of inactivity.

17.    GTL is a Delaware corporation with its primary place of business in the state of Virginia.

18.    GTL is owned by the private equity firm American Securities LLC, and operates through wholly owned subsidiaries to provide inmate calling services throughout the United States.

19.    GTL and its subsidiaries serve over 2,200 correctional facilities and 1.1 million inmates in forty-eight (48) states.

20.    GTL is an enterprise engaged in interstate commerce.

21.    GTL is authorized to do business in Georgia.

22.    GTL conducts substantial business in Georgia.

23.    GTL has agreed to accept service of this Second Amended Complaint.

4

## JURISDICTION AND VENUE

24.    The Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), as well as 28 U.S.C. § 1332(d)(2) and (6).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than one hundred (100) members of the putative Class, and Plaintiffs and GTL are citizens of different states.

25.    This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

26.    This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

27.    This Court has personal jurisdiction over Plaintiffs, who are residents of the state of Georgia and who submit themselves to the jurisdiction of this Court.

28.    This Court has personal jurisdiction over GTL, which is a foreign corporation that does substantial business in the state of Georgia.

29.    Venue is proper in this Court, the United States District for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §1391(b) and 18 U.S.C. §1965, because GTL regularly conducts business in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### *Opening and Funding of AdvancePay Accounts through GTL's IVR System*

30.     On or about March 12, 2014, Plaintiff Githieya opened and funded an AdvancePay account using GTL's IVR system.

31.     On or about March 9, 2011, Plaintiff Boccia opened and funded an AdvancePay account using GTL's IVR system.

32.     On or about November 2, 2011, Plaintiff Byers opened and funded an AdvancePay account using GTL's IVR system.

33.     On or about February 15, 2009, Plaintiff Lockett opened and funded an AdvancePay account using GTL's IVR system.

34.     Each Plaintiff deposited money into his or her AdvancePay account by entering his or her credit card information into the IVR system over the phone.

35.     Each Plaintiff established his or her AdvancePay account and deposited money into his or her AdvancePay account using GTL's IVR system.

36.     One purpose of the IVR system is to offer friends and family members the opportunity to establish a prepaid account for the purpose of receiving calls from inmates incarcerated at facilities that contract with GTL for calling services.

37.      The IVR system offers prospective account holders the option of placing deposits of $25 and $50 (and additional amounts during certain time periods) into their AdvancePay accounts.

38.     Upon the establishment and funding of a prepaid account, GTL holds the accountholder's deposit in his or her AdvancePay account, less any initial deposit fees, to be used to pay for telephone calls received from incarcerated friends or family members.

39.     Each of the Plaintiffs deposited prepaid funds with GTL in exchange for GTL's agreement to hold his or her prepaid funds until those funds were needed to pay for telephone calls received by the AdvancePay customer.

40.     During Plaintiffs' calls with GTL's IVR system, an automated voice may have referred to "terms of use," but did not state the "terms of use."

41.     The automated voice did not seek any Plaintiff's affirmative assent to the "terms of use" prior to accepting their prepaid funds.

42.     The automated voice did not require any Plaintiff to "press 1" or say "yes" to indicate their agreement to any "terms of use" prior to establishing an account or making a deposit of prepaid funds.

43.     A majority of GTL's AdvancePay accountholders establish AdvancePay accounts over the phone using the IVR system.

44.     Plaintiffs' experience with account opening and funding is typical of GTL customers who open and fund AdvancePay accounts by use of GTL's IVR system.

***GTL's Inactivity Policy***

45.     Since 2009 or earlier, GTL has maintained a policy of classifying an AdvancePay account as "inactive" if the account does not have activity for a period of 90 or 180 days ("Inactivity Policy").

46.     Upon classifying the account as "inactive," GTL reduces any outstanding balance in the account to $0.00 and converts any unused funds to revenue.

47.     Although a small percentage of AdvancePay accounts are not subject to GTL's Inactivity Policy, most AdvancePay accounts are subject to the Inactivity Policy.

48.     In fact, more than 95% of all AdvancePay accounts are subject to the Inactivity Policy.

***Mr. Githieya's Losses Due to the Inactivity Policy***

49.     On June 10, 2014, GTL classified Mr. Githieya's AdvancePay account as "inactive" due to account inactivity for a period of 90 days.

50.     At the time GTL classified Mr. Githieya's account as inactive, Mr. Githieya had an account balance of $18.05.

51.    When GTL classified Mr. Githieya's account as inactive, GTL reduced Mr. Githieya's AdvancePay account balance to $0.00 and converted the remaining prepaid balance in Mr. Githieya's account to revenue.

52.    After GTL removed funds from Mr. Githieya's account, the remaining balance in the account was $0.00.

53.    Mr. Githieya suffered at least $18.05 in losses due to the Inactivity Policy.

### Ms. Boccia's Losses Due to the Inactivity Policy

54.    On June 8, 2011, GTL classified Ms. Boccia's AdvancePay account as inactive due to inactivity for a period of 90 days.

55.    At the time GTL classified Ms. Boccia's AdvancePay account as inactive, Ms. Boccia's AdvancePay account had an account balance of $1.35.

56.    When GTL classified Ms. Boccia's account as inactive, GTL reduced Ms. Boccia's AdvancePay account balance to $0.00 and converted those funds to revenue.

57.    Over the course of the next several years, Ms. Boccia deposited additional funds into her AdvancePay account.  In total, GTL classified her account as "inactive" on at least seven separate occasions due to inactivity for a period of 90 days.

58.     On April 15, 2017, GTL classified Ms. Boccia's account as inactive, and reduced the balance in her account from $0.12 to $0.00.

59.     On each occasion when GTL declared Ms. Boccia's account "inactive," GTL removed all funds from Ms. Boccia's AdvancePay account and converted those funds to revenue.

60.     After GTL removed funds from Ms. Boccia's account, the remaining balance in the account was $0.00.

61.     In total, Ms. Boccia suffered at least $8.30 in losses due to the Inactivity Policy.

### *Ms. Byers's Losses Due to the Inactivity Policy*

62.     On February 3, 2012, GTL classified Ms. Byers's AdvancePay account as inactive due to inactivity for a period of 90 days.

63.     At the time GTL classified Ms. Byers's AdvancePay account as inactive, Ms. Byers's AdvancePay account had an account balance of $1.42.

64.     When GTL classified Ms. Byers's account as inactive, GTL reduced Ms. Byers's AdvancePay account balance to $0.00 and converted those funds to revenue.

65.     Over the course of the next several years, Ms. Byers deposited additional funds into her AdvancePay account.  In total, GTL classified her account

as "inactive" on at least four separate occasions due to inactivity for a period of 90 days.

66.     On April 18, 2017, GTL classified Ms. Byers's account as inactive, and reduced the balance in her account from $8.66 to $0.00.

67.     On each occasion when GTL declared Ms. Byers's account "inactive," GTL removed all funds from Ms. Byers's AdvancePay account and converted those funds to revenue.

68.     After GTL removed funds from Ms. Byers's account, the remaining balance in the account was $0.00.

69.     In total, Ms. Byers suffered at least $10.47 in losses due to the Inactivity Policy.

### *Ms. Lockett's Losses Due to the Inactivity Policy*

70.     On August 18, 2011, GTL classified Ms. Lockett's AdvancePay account as inactive due to inactivity for a period of 90 days.

71.     At the time GTL classified Ms. Lockett's AdvancePay account as inactive, Ms. Lockett's AdvancePay account had an account balance of $2.70.

72.     When GTL classified Ms. Lockett's account as inactive, GTL reduced Ms. Lockett's AdvancePay account balance to $0.00 and converted those funds to revenue.

73.   Over the course of the next several years, Ms. Lockett deposited additional funds into her AdvancePay account.  In total, GTL classified her account as "inactive" on at least three separate occasions due to inactivity for a period of 90 days.

74.   On January 5, 2015, GTL classified Ms. Lockett's account as inactive, and reduced the balance in her account from $1.53 to $0.00.

75.   On each occasion when GTL declared Ms. Lockett's account "inactive," GTL removed all funds from Ms. Lockett's AdvancePay account and converted those funds to revenue.

76.   After GTL removed funds from Ms. Lockett's account, the remaining balance in the account was $0.00.

77.   In total, Ms. Lockett suffered at least $7.62 in losses due to the Inactivity Policy.

### *GTL's Practices are Unreasonable and Unlawful*

78.   At all times relevant to this action, GTL implemented the Inactivity Policy.

79.   GTL did not inform any Plaintiff that it would reduce their account balances to $0.00 after a period of inactivity when Plaintiffs agreed to deposit prepaid funds into an AdvancePay account to be used to fund inmate calling services.

80.     No Plaintiff agreed to pay GTL their prepaid account balance in the event his or her account remained inactive for a period of 90 or 180 days.

81.     GTL also never informed any Plaintiff either prior to or after GTL reduced the remaining balance in any of their AdvancePay accounts to zero and converted their funds to its own revenue, even when those Plaintiffs subsequently deposited additional prepaid funds into their AdvancePay accounts to prepay for additional phone calls.

82.     While GTL publishes "terms of use" on its webpage, even these "terms of use" contain no notice that a customer's funds will be reduced to zero after a period of inactivity.

83.     During the time that Plaintiffs maintained their GTL AdvancePay accounts, GTL was the exclusive provider of inmate calling services for thousands of correctional facilities nationwide.

84.     Where GTL is the exclusive provider of inmate calling services at a particular facility, a person who wishes to have prepaid telephonic communications with an incarcerated person at that facility often has no choice but to use GTL's services.

85.     The balance remaining on accounts that GTL declares "inactive" is typically very low.

86.    Because of the small amount of funds in question, the cost to an individual seeking recourse, even in small claims court, would far exceed the amount in question.

## CLASS ALLEGATIONS

87.    Plaintiffs bring this action against GTL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.

88.    Plaintiffs seeks to represent the following class (hereinafter referred to as the "Class"):

> All persons nationwide who (i) established and funded a prepaid account through GTL's interactive-voice-response ("IVR") system and (ii) had a positive account balance that was reduced to $0.00 due to account inactivity for 180 days or less.

89.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class based upon information they learn during the course of discovery and until such time as the Court determines whether class certification is appropriate.

90.    The Class is so numerous that joinder of all Class members would be impracticable.

91.    Thus, the proposed Class satisfies the numerosity requirement of Rule 23.

92.    Each Plaintiff (1) opened and funded a prepaid account through GTL's IVR system and (2) had a positive account balance that was reduced to $0.00 due to account inactivity for a period of 180 days or less.

93.     Thus, Plaintiffs' claims are typical of the claims of other Class members.

94.    Plaintiffs will fairly and adequately represent the interests of the absent Class members.  Plaintiffs have no claims antagonistic to those of the Class.

95.    Plaintiffs' attorneys are experienced in the prosecution of class actions and complex litigation as well as in the representation of the interests of incarcerated persons and their friends and families.

96.    There are questions of law and fact common to each of the Class members, the answers to which will advance the resolution of the claims of all of the Class members.  These questions include (but are not limited to):

a. Whether the opening and funding of a prepaid account using GTL's IVR system formed an express or implied contract between GTL and each Plaintiff or Class member;

b. The terms of the contract between GTL and each Plaintiff or Class member;

c.  Whether GTL breached the contract that it formed with each Plaintiff or Class member by reducing each Plaintiff's or Class member's positive prepaid account balance to $0.00 after a period of inactivity of 180 days or less;

d.  Whether, in the event that no express or implied contract is found to exist, GTL has been unjustly enriched by converting funds to revenue under the Inactivity Policy;

e.  Whether GTL's practice of taking prepaid funds remaining in each customer's account after a period of inactivity violates the Federal Communications Act and regulations promulgated thereunder;

f.  Whether GTL is liable to Plaintiffs and the members of the Class for damages; and

g.  Whether Plaintiffs and the members of the Class are entitled to injunctive or other equitable relief.

97.  These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual members of the Class.

98.  In addition, certification is appropriate under Rule 23(b)(1) of the Federal Rules of Civil Procedure because there is a risk that the prosecution of separate actions would establish incompatible standards of conduct for GTL.

99.    Certification is also appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because there are common issues of law or fact that predominate over issues affecting individual Class members and, in addition, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**

**BREACH OF CONTRACT**

100.    Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 99 as if they were fully set forth herein.

101.    GTL entered into contracts with each Plaintiff and each member of the Class.

102.    The material terms of the contract between GTL and each Plaintiff and each member of the Class are uniform because the same contract was formed as a result of Plaintiffs' and the Class's use of GTL's automated IVR system to establish and fund their AdvancePay accounts.

103.    The IVR system invites accountholders to (i) open a prepaid account and (ii) deposit prepaid funds into the account.

104.   Prepaid funds are deposited into an AdvancePay account for the purpose of funding telephone calls with inmates incarcerated at institutions where GTL provides calling services.

105.   In offering customers the option to open and fund a prepaid calling account, GTL expressly or implicitly agrees to hold a customer's prepaid funds (less any initial deposit fees) until such funds are needed to pay for telephone calls with inmates incarcerated at institutions where GTL provides calling services.

106.   Each of the Plaintiffs opened and funded a prepaid calling account in exchange for GTL's agreement to hold their prepaid funds until such funds were needed to pay for telephone calls received by the AdvancePay customer.

107.   The contracts formed between Plaintiffs and Class members, on the one hand, and GTL, on the other, did not include any express or implicit term that would permit GTL to take a customer's prepaid funds and treat those funds as revenue due to a period of inactivity for 180 days or less.

108.   Further, any term purporting to allow GTL to take prepaid funds solely due to inactivity for 180 days or less would be unenforceable as a matter of law because such term would constitute an unlawful penalty.

109.   GTL breached its express or implied contract with each Plaintiff and each Class member by taking their prepaid funds due to a period of inactivity of 180 days or less.

110.   As a direct, proximate, and legal result of GTL's breach of the contracts that it entered into with each Plaintiff and each member of the Class, each  Plaintiff and each member of the Class has suffered damages in an amount to be determined at trial.

## COUNT II

## UNJUST ENRICHMENT

111.   Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 99 as if they were fully set forth herein.

112.   In the alternative, GTL has been unjustly enriched by its practice of converting to revenue any funds remaining in an account that GTL deems inactive after a period of 180 days or less of inactivity.

113.   Plaintiffs and the members of the Class have conferred a substantial benefit upon GTL in the form of the prepaid amounts that Plaintiffs and the Class members deposited with GTL and which were taken as a result of GTL's Inactivity Policy.

114.   The prepaid amounts deposited with GTL were retained by GTL under circumstances such that it would be inequitable and GTL would be unjustly enriched if GTL is permitted to retain the benefit of such prepaid amounts.

115.   GTL maintained a company policy and business practice of taking and treating as revenue all funds that remained in the accounts created by Plaintiffs and the Class members after a period of 180 days or less in which there had been no activity without providing the inmate calling services that Plaintiffs and the Class members paid those funds to receive.

116.   This policy and practice was unjust and inequitable.

117.   GTL deliberately sought to prevent Plaintiffs and the Class members from discovering the policy and practice.

118.   By application of its unjust policy and practice, GTL has been unjustly enriched at the expense of Plaintiffs and the Class members.

119.   As a result of GTL's unjust enrichment, Plaintiffs and the members of the Class have sustained damages in an amount to be determined at trial.  Plaintiffs and the members of the Class seek disgorgement and restitution of the amounts that GTL wrongfully obtained by application of its unjust policy and practice.

## COUNT III

## VIOLATIONS OF THE FEDERAL COMMUNICATIONS ACT

120.   Plaintiff Githieya hereby incorporates the allegations set forth in paragraphs 1 through 119 as if they were fully set forth herein.

121.   GTL offers inmate calling services and is a "common carrier" as defined by the FCA.

122.   AdvancePay accounts are capable of receiving both intrastate and interstate calls.

123.   GTL facilitates substantially all inmate calls to AdvancePay accountholders via internet protocol (IP) networks using Voice over Internet Protocol (VoIP) technology.

124.   As a common carrier, GTL is bound by Section 201(b) of the FCA, which provides: "All charges, practices, classifications, and regulations for and in connection with [a] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."  47 U.S.C. § 201(b).

125.   GTL's policy of classifying the accounts of Githieya and the Class members as inactive after a period of 90 or 180 days, reducing the balance in those

accounts to zero, and taking the funds that remained in the accounts as revenue, is unjust and unreasonable.

126.   The Federal Communications Commission has prohibited GTL's inactivity practice. *See* dkt. 91-1 (FCC's *Second Report and Order and Third Further Notice of Proposed Rulemaking*) at 84 ¶ 161, 85 ¶ 163, 90 ¶ 174 & n.627, 93 ¶¶ 180-181 & n.643.

127.   Plaintiff Githieya established and funded his AdvancePay account with the intent to receive at least one interstate call. Plaintiff Githieya's call was thwarted by GTL's unjust and unreasonable inactivity policy.

128.   Specifically, Mr. Githieya established and funded his account for the purpose of and with the intent to receive calls from his cousin, Jotham Kimani.

129.   At the time Mr. Githieya established and funded his account, and at all times relevant to this case, Mr. Githieya resided in Georgia.

130.   Mr. Githieya established and funded his account by placing an interstate telephone call to GTL's toll-free number, which connected him to GTL's IVR. The GTL server that received and processed that call was not located in Georgia. GTL's server that received and processed that call and facilitated the establishment of Mr. Githieya's AdvancePay account was located in either Alabama or Texas.

131.   At the time Mr. Githieya established and funded his account, and at all times during which Mr. Githieya maintained an AdvancePay account for the purpose of receiving calls, Mr. Kimani was incarcerated in South Carolina in the custody of the South Carolina Department of Corrections ("SCDOC"), primarily at Kershaw Correctional Institution in Kershaw, South Carolina.

132.   At the time Mr. Githieya established and funded his AdvancePay account, GTL was (and to Plaintiffs' knowledge remains) the exclusive telephone services provider for the SCDOC.

133.   Several years before he established his AdvancePay account, Mr. Githieya had received at least one collect call from Mr. Kimani while Mr. Kimani was incarcerated in South Carolina.

134.   In or around December of 2013, Mr. Kimani's mother—Mr. Githieya's great aunt—passed away.

135.   At or around the same time, Mr. Githieya travelled from his home in Georgia to South Carolina to visit Mr. Kimani.

136.   Mr. Githieya learned that Mr. Kimani was having mental health issues and other difficulties in prison.

137.   In March of 2014, Mr. Githieya decided to set up an AdvancePay account so that Mr. Kimani would be able to communicate with Mr. Githieya while Mr. Kimani was incarcerated in South Carolina.

138.   Because GTL was the exclusive telephone services provider for the SCDOC, Mr. Githieya understood that, for Mr. Kimani to be able to call him, Mr. Githieya would need to set up an AdvancePay account with GTL.

139.   Accordingly, on March 11, 2014, Mr. Githieya set up the AdvancePay account described above and that is at issue in this action with the intent to receive interstate telephone calls from his cousin, Mr. Kimani, who was incarcerated in South Carolina.

140.   But Mr. Githieya was not able to receive those calls because GTL converted the funds he had deposited into his AdvancePay account into revenue after it deemed his account inactive following a period of 90 days during which Mr. Githieya did not receive a call or otherwise access that account.

141.   On June 10, 2014, GTL converted the funds remaining in Mr. Githieya's account.

142.   GTL's practice of converting funds remaining in an account that GTL deems inactive, after a period of 180 days or less of inactivity, thwarted at least one interstate call that Mr. Githieya intended to receive.

143.   GTL's actions are unlawful under Sections 201 and 276 of the FCA. *See* 47 U.S.C. §§ 201, 276.

144.   The FCA provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies." 47 U.S.C. §207.

145.   Plaintiffs have not made complaint to the FCC regarding the violations alleged herein; therefore, they have standing to bring an action in U.S. District Court.

146.   No other person on behalf of the putative class has brought an action before FCC to recover damages for the violations alleged herein.

147.   GTL's violation of the FCA, as described herein, was knowing and intentional.

148.   GTL is liable to Plaintiff Githieya and all members of the Class who received or intended to receive at least one interstate call for the amounts it took from their accounts due to inactivity.

149. GTL applied its unlawful inactivity policy to hundreds of thousands, if not millions, of AdvancePay accountholders who received or intended to receive interstate calls.

150. To the extent the Court deems it necessary to do so, the Court may certify an FCA subclass of Class members who, in addition to meeting the criteria for class membership set forth in Paragraph 88, received or intended to receive at least one interstate call.

Respectfully submitted this October 12th, 2018.

/s/ Michael A. Caplan
Michael A. Caplan
Georgia Bar No. 601039
James W. Cobb
Georgia Bar No. 420133
T. Brandon Waddell
Georgia Bar No. 252639
Sarah Brewerton-Palmer
Georgia Bar No. 589898
Ashley C. Brown
Georgia Bar No. 287373
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com
jcobb@caplancobb.com
bwaddell@caplancobb.com
spalmer@caplancobb.com
abrown@caplancobb.com

James Radford
Georgia Bar No. 108007
**RADFORD & KEEBAUGH, LLC**
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com

Andrew R. Lynch
Georgia Bar No. 120333
**ANDREW R. LYNCH, P.C.**
150 E. Ponce De Leon Ave.
Suite 225
Decatur, Georgia 30030
(404) 373-7735
andrew@atlnotguilty.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 12th day of October, 2018.

/s/ *Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
(404) 596-5600 – Office
(404) 596-5604 – Facsimile
mcaplan@caplancobb.com