IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENSON GITHIEYA, *et al.*,           :
                                     :
                                     :
          Plaintiffs,                :
                                     :
                                     :     CIVIL ACTION NO.
v.                                   :     1:15-cv-0986-AT
                                     :
GLOBAL TEL*LINK                      :
CORPORATION,                         :
                                     :
          Defendant.                 :

## <u>ORDER</u>

Before the Court is Plaintiffs' Motion to Certify Class Action. [Doc. 122]. This putative class action was filed on April 3, 2015. (Doc. 1.) Initially, the Court referred this case to arbitration on Defendant Global Tel*Link Corporation's ("GTL") motion. (Doc. 23.) After the arbitrator determined that the parties' dispute was not subject to mandatory arbitration, the case proceeded in this Court. (Doc. 27.) Plaintiffs filed the Second Amended Complaint on October 23, 2017 (Doc. 72), which added three new representative plaintiffs, Kate Boccia, Darlene Byers, and Nellie Lockett. Later, Plaintiff Kate Boccia was dropped as a party on Plaintiffs' motion. (Doc. 126.)

The Motion for Class Certification was filed on April 13, 2018. (Doc. 122.) GTL filed a Response (Doc. 137) and an Amended Response. (Doc. 139.) Plaintiffs

filed a Reply. (Doc. 156.) The Parties also filed a number of supplemental briefs. (Docs. 148, 150, 159, 182, 183, 256, 257.)[1]

In the middle of briefing, Plaintiffs filed a Motion to Stay Class Certification Briefing pending resolution of certain discovery disputes. (Docs. 140, 141.) Plaintiffs then filed their Motion for Sanctions, alleging that GTL made false representations during discovery, and relied on those representations in support of its opposition to class certification. (Doc. 168.) The Court held hearings on March 8 and 11, 2019, after which the Court granted the Motion to Stay Class Certification pending the Court's ruling on the Motion for Sanctions. (Doc. 207; Order of March 12, 2019.) By separate Order, the Court on this same date has granted the Motion for Sanctions. Now, the Court takes up the Motion for Class Certification anew.

For the reasons that follow, the Court **GRANTS** the motion as to the breach of contract and unjust enrichment claims, subject to the Court's amendment of the class definition to cover the states of Georgia and South Carolina in the manner described below (as opposed to a nationwide class action as to all claims), and to cover claims arising on or after April 3, 2011. As discussed further below, the Court will not foreclose some modification of this geographic scope subject to a proper showing.

---

[1] The various motions for leave to file supplemental briefs are all **GRANTED**. The Court finds oral argument unnecessary for determination of the motion given the extensive briefing provided and the evidence and argument already submitted in the case on the record and in connection with the Sanctions Order. See, Fed. R. Civ. P. 78(b).

## I.     Background

The Court has recounted this case's factual background in its November 30th Order granting Plaintiff's Motion for Sanctions ("Sanctions Order"). The Court excerpts relevant portions of that background, with minor modifications, for clarity and ease of reference.

### A.     GTL's AdvancePay Accounts

GTL is a Delaware corporation that, through its wholly owned subsidiaries, provides inmate calling services throughout the United States.  (Third Am. Compl., ¶¶ 17-18, Doc. 72. (hereinafter, "Compl."))  GTL and its subsidiaries serve over 2,200 correctional facilities in the United States in 48 states.  (*Id.* ¶ 19.) AdvancePay accounts are pre-funded — the customer deposits money into her account before receiving any phone calls. AdvancePay accounts are GTL's largest single revenue stream. (30(b)(6) Deposition of John Baker I at 16:14–17; 27:3–4; 29:17–20, Doc. 88.) Plaintiffs allege that they suffered losses when GTL applied its "inactivity policy" to their AdvancePay accounts. (Compl. ¶¶ 1–16, Doc. 178.) GTL's AdvancePay account system allows a customer to deposit funds into a prepaid account for the purpose of receiving calls from inmates at correctional facilities that contract with GTL. (*Id.* ¶ 36.) GTL then holds the funds in the account in order to pay for calls that a customer receives from an inmate. (Dep. Baker I at 129:6–19, Doc. 88) ("AdvancePay customers make deposits, not payments.") Thus, when an incarcerated individual calls a customer, funds are deducted from the prepaid account. (*Id.*) Each Plaintiff deposited money into an AdvancePay account by

3

entering his or her credit card information over the phone into the interactive voice-response (IVR) system. (Compl. ¶ 34, Doc. 178.) The process of establishing an AdvancePay account through the IVR system is entirely automated and is basically identical nationwide. (Dep. Baker I at 189:1–190:11, Doc. 88.) Plaintiffs allege that the IVR system's automated voice "may have referred to 'terms of use,' but did not state the 'terms of use.'" (Compl. ¶ 40, Doc. 178.) Plaintiffs further allege that the automated system did not require Plaintiffs to affirmatively accept any terms of use prior to establishing an account, either vocally or by pressing a button. (*Id*. ¶¶ 41–42.)

### B.   GTL's "Inactivity Policy"

Simply stated, if a GTL customer has not had any phone call activity in her account in ninety days, GTL takes whatever money is left in the account. Less simply stated, if a GTL AdvancePay account does not see any activity for a period of 90 days, or for accounts having received calls from certain facilities, 180 days, GTL automatically classifies the account as "inactive," reduces any outstanding balance to $0.00, and converts these unused funds to revenue for GTL.[2]   GTL refers to this practice as "breakage." (Dep. Baker I at 79:21–80:1, Doc. 88.)

Plaintiffs explain how GTL implements its inactivity policy in their Motion for Class Certification. (*See* Pls.' Br. Class Cert. 10–12, Doc. 123-1.) Essentially, GTL has a software application, called the "Breakage Calculator," which GTL uses to

---

[2] Plaintiffs allege that GTL's inactivity policy is ongoing. (Compl. ¶¶ 45, 78, 125, Doc. 178.)

detect inactive accounts and convert the remaining balances to revenue.[3] Every night the Breakage Calculator scans all active AdvancePay accounts, searching for those that have a positive balance and that have been inactive. (30(b)(6) Deposition of Margaret Phillips at 94:20–95:24, 69:8–10; 97:25–98:5, Doc. 87) Once the Breakage Calculator determines the account is eligible for breakage, GTL's system then takes two steps. First, the system tags the account as "inactive," which prevents the accountholder from receiving any further calls. Second, GTL's system "reduces the balance [remaining in the account] to zero" and converts the "balance of the account [so that it] is reflected as revenue" in GTL's books. (Dep. Baker I at 47:18–22; 49:4–15, 50:1–8, 165:18–166:7, Doc. 88; *see also* Dep. Phillips at 195:7–24; 196:22–197:2, Doc. 87.)

Plaintiffs claim that GTL never informed them that it would reduce their account balances to $0.00 after a period of inactivity when they first established AdvancePay accounts. (Compl. ¶¶ 79, 81, Doc. 178.) Further, Plaintiffs allege that the published webpage "terms of use" contained no notice that a customer's funds would be reduced to $0.00 after an inactivity period. (*Id.* ¶ 82.) Thus, Plaintiffs allege that this "inactivity policy" constituted a taking of their funds that they were never informed of and never agreed to. (*Id.* ¶¶ 80–81.)

---

[3] There are a few exceptions to this practice. For example, some facilities specifically exempt themselves for this policy. (*See* 30(b)(6) Deposition of Margaret Phillips at 90:19–91:4, Doc. 87.)

### C.    Plaintiffs' Claims

Plaintiffs bring claims for breach of contract (Count I), unjust enrichment (Count II), and violations of the Federal Communications Act (FCA), 47 U.S.C. § 201, *et seq.* (Count III). In their Count I contract claim, Plaintiffs allege that GTL entered into contracts with them and that these contracts were formed when Plaintiffs' used GTL's automated IVR system in establishing their AdvancePay accounts. (*Id.* ¶¶ 101–102.) Specifically, Plaintiffs assert that GTL expressly or implicitly agrees to hold a customer's funds until they are needed to pay for a call with an inmate. (*Id.* ¶ 105.) Each Plaintiff opened and funded a prepaid account in exchange for such a service. (*Id.* ¶ 106.) These alleged contracts, between Plaintiffs and GTL, included no express or implicit terms that permit GTL to take a customer's prepaid funds and treat such funds as revenue (via GTL's "breakage" policy) after a 90– or 180– day period of inactivity. (*Id.* ¶ 107.) Plaintiffs further allege that, even if there was a "term" allowing GTL to take prepaid funds, it would be unenforceable as a matter of law as an unlawful penalty. (*Id.* ¶ 108.) Consequently, Plaintiffs allege they suffered damages from GTL's breach of these express or implied contracts. (*Id.* ¶¶ 109–110.)

In the alternative to their contract claim, Plaintiffs bring a claim of unjust enrichment. (*Id.* ¶ 112.) Plaintiffs allege that they conferred a substantial benefit on GTL in the form of prepaid amounts deposited with, and later taken by, GTL. (*Id.* ¶ 113.) Plaintiffs further allege that GTL "deliberately sought to prevent Plaintiffs and the Class members from discovering the policy and practice." (*Id.* ¶

117.) Plaintiffs seek disgorgement and restitution of amounts wrongfully obtained pursuant to this "unjust policy and practice." (*Id.* ¶ 119.)

Finally, Plaintiff Githieya and the putative class members assert a claim for violations of the FCA. Plaintiff Githieya alleges that GTL (a common carrier engaged in interstate commerce) violated the FCA's requirement that all "charges, practices, classifications, and regulations" be just and reasonable. (*Id.* ¶¶ 20, 121, 122, 124) (citing 47 U.S.C. § 201(b).) Any such "charge, practice, classification or regulation" that is unjust or unreasonable is declared unlawful. (*Id.* ¶ 124.) GTL's "inactivity policy," according to Plaintiffs, is unjust and unreasonable — and thus unlawful. (*Id.* ¶ 125.) Noting that the FCA allows an individual to either make a complaint to the Federal Communications Commission (FCC) or bring suit in district court, Plaintiffs assert that because they have not made a complaint to the FCC, they have standing to bring an FCA claim in district court. (*Id.* ¶¶ 144–46) (citing 47 U.S.C. § 207.)

Plaintiffs also ask the Court to permanently enjoin GTL from continuing its "inactivity policy" and taking funds from customer accounts. Plaintiffs seek damages for the amounts removed from their accounts, as well as reasonable attorney's fees, and further relief deemed necessary.

### D.   Representative Plaintiffs

Having recounted the background about GTL's practices above, the Court turns next to each of the Representative Plaintiffs. Each Plaintiff has had their account balances set to zero as a result of GTL's inactivity policy.

### 1.    Benson Githieya

Plaintiff Benson Githieya is a resident of DeKalb County, Georgia. (Compl. ¶ 1.) He is an attorney who currently works as a public defender in DeKalb County. (Deposition of Benson Githieya, Doc. 116-1 at 6:22–7:10; 8:1–10.) On or about March 12, 2014, using GTL's automated interactive-voice-response ("IVR") telephone system, Mr. Githieya opened and funded an "AdvancePay" account. (Compl. ¶ 2.) He sought to communicate with his cousin (actually his dad's first cousin) Jotham Kimani, who was incarcerated in Clayton County, Georgia and South Carolina, though he could not confirm they ever spoke. (Dep. Githieya at 11, 64, 92:11-93:15.)

On June 10, 2014, GTL classified Mr. Githieya's AdvancePay account as "inactive" due to account inactivity for a period of 90 days. (Compl. ¶ 49; Answer to Third Am. Compl. (hereinafter, "Answer") ¶ 49.) At the time, the account balance was $18.05. (Answer ¶ 50.) GTL admits that at the time, "the computer system classified the account as inactive and reflected an account balance of $0.00," but denies that it "removed or took funds from the account," because a "customer whose account is set to inactive can contact GTL, have the account set to active with any remaining balance available for use or withdrawal." (*Id.* ¶ 51.) This denial and GTL's characterization of the process of reactivation throughout the briefing process is somewhat misleading, as it implies a simple phone call would do the trick. (*See, e.g.*, Am. Resp. Class Cert at 9) (disingenuously suggesting that GTL just needed "certain information" and "once he confirmed the account,

GTL would provide a refund or reinstate the account.") In fact, as Mr. Githieya learned, GTL requires the holder of an inactive account to figure out that GTL has emptied the account, locate a billing statement that the account holder may not have thought they needed to keep, and fax it in to GTL, even though prior to inactivity the account could be verified simply by providing information such as the date of the last call received and name of the facility. (Tr. of Tel. Conversation dated 3/11/15 ("Tel. Tr.") at 7, Def's Ex. L, Doc. 137-12.)[4]

### 2.   Darlene Byers

Plaintiff Darlene Byers is a resident of Carroll County, Georgia. (Compl. ¶ 9.) Ms. Byers opened her AdvancePay account on November 2, 2011. (Darlene Byers Account History, Doc. 123-29 at 5.) She opened the account for the purpose of communicating with her son James Whitman who was incarcerated in several facilities within the State of Georgia. (Deposition of Darlene Byers at 11–12, Doc. 115-1.) She received a handful of calls leading up to November 4, 2011, after which her account went unused for 90 days, and was subjected to breakage. (Byers Account History, Doc. 123-29.) Ms. Byers added funds to her AdvancePay account through GTL's IVR system, apparently not realizing funds had been taken out due to breakage. (*Id.*; Compl. ¶ 11.) On February 3, 2012, GTL again classified Ms.

---

[4] GTL contends that Mr. Githieya manufactured this litigation. In March 2014, before opening an account, he sought legal advice from a former colleague, Mr. Andrew Lynch, who represents the Plaintiffs. (Dep. Githieya at 109:9–110:18, Doc. 116-1.) One year after setting up his AdvancePay account, Mr. Githieya and Mr. Lynch jointly called GTL, but did not disclose that Mr. Lynch was on the line, or that the call was being recorded. (Tel. Tr., Doc. 137-12; Resp. to Lynch Subpoena at 2, Def.'s Ex. M, Doc. 173-13.) While GTL contends this bears on the merits and by extension typicality, GTL does not challenge Mr. Githieya's adequacy as a representative on these grounds, and in any case, GTL cannot say the same of the other two representative plaintiffs.

Byers's AdvancePay account as inactive due to no activity for a period of 90 days. (Compl. ¶ 62; Answer ¶ 62.) At that time, Ms. Byers's AdvancePay account had an account balance of $1.42. (Compl. ¶ 62; Answer ¶ 62.) Over the course of the next several years, Ms. Byers deposited additional funds into her AdvancePay account. In total, GTL classified her account as "inactive" on at least four separate occasions. (Compl. ¶ 65; Answer ¶ 65; Byers Account History.)

GTL contends that on at least two occasions, she funded her account with a customer-service representative, who it asserts was required to inform her of the inactivity policy. (Declaration of Vance MacDonald dated May 23, 2018 ¶¶ 9-10, Def.'s Ex. A, Doc. 137-1.) However, Ms. Byers recounted "many" conversations with GTL, but testified that she never spoke with anyone at GTL who discussed the terms of her contract. (Deposition of Darlene Byers at 39:13–22, 41:10–42:2, 57:9–58:6, Doc. 115-1.)

### 3.    Nellie Lockett

Plaintiff Nellie Lockett is a resident of DeKalb County, Georgia and a church elder. (Compl. ¶ 13, 14.) GTL's records show Ms. Lockett first opened an account on February 15, 2009 through the IVR process. (Nellie Lockett Account History, Doc. 123-31 at 5.)[5] Ms. Lockett used her account to communicate with her son, Marcellius, who was incarcerated in DeKalb County Jail and Autry State Prison in Georgia, and her grandson Euzarlous Pattillo, who was also incarcerated in DeKalb

---

[5] (*See also* Dep. McNitt at 135:16–20) ("Q: Do you have any information to dispute that Ms. Lockett established this account over the phone via an IVR system? A: No").

County.  (Deposition of Nellie Lockett at 12–15, Doc. 117-1.) On August 18, 2011, GTL classified Ms. Lockett's AdvancePay account as inactive due to inactivity for a period of 90 days. (Compl. ¶ 70; Answer ¶ 70.) At the time GTL classified Ms. Lockett's AdvancePay account as inactive, Ms. Lockett's AdvancePay account had an account balance of $2.70. (Compl. ¶ 71; Answer ¶ 71.) GTL contends that she also made at least one deposit with a live operator, who it asserts would have been required to discuss the inactivity policy, (MacDonald Decl. ¶¶ 9–10), but it offers no proof that such discussion actually took place.

## II.    Legal Standard

Federal Rule of Civil Procedure 23 governs class certification.  It provides that one or more members of a class of litigants may sue on behalf of the class's members only if:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The rule's four requirements are "commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation.'"  *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (citation omitted).   Parties seeking class certification must also demonstrate that the putative class fits into one of the types of class actions listed in Rule 23(b).

*Wal-Mart v. Dukes*, 564 U.S. 338, 345 (2011).  Plaintiffs seek certification under Rule 23(b)(3).  Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

The party seeking class certification bears the burden of showing that the Rule 23 requirements are met. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Moreover, the party seeking class certification "must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks and citations omitted). District courts are obliged to undergo a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations omitted). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage" and merits questions may be considered "only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (punctuation altered).

## III.   Discussion

### A.    Effect of Court's Sanction Order

The Court, in its Sanctions Order, as a consequence of discovery and briefing misconduct by GTL, entered the following merits sanctions:

A.    The Court holds that there are valid contracts between the named
      Plaintiffs and the putative class and GTL. These contracts do not
      include the "may expire" statement. GTL is precluded from arguing
      that class members agreed to GTL's so-called inactivity policy. GTL
      may not argue that Plaintiffs heard about this policy from external
      sources, such as GTL's call center agents, GTL's website, or GTL's filed
      tariffs. Moreover, the inclusion of the "may expire" statement in the
      IVR script is not a bar by itself to recovery on Plaintiffs' unjust
      enrichment claims. . . .

B.    The Court also strikes the portions of Defendant's responses to
      Plaintiffs' Motion for Class Certification (Doc. 171) that mention or
      make arguments based on the presence of "may expire" statement.
      The Court takes note of GTL's pattern of bad faith conduct in this case
      and, as this misrepresentation was solely GTL's fault, GTL is not
      allowed to amend its response or file subsequent briefing on this issue.

(Sanctions Order) Plaintiffs also requested that as a sanction, the Court strike

GTL's response to the Motion for Class Certification. (Pls.' Mot. Sanctions at 29,

Doc. 168.) While the Court has stricken arguments based on misrepresentations,

the Court cannot grant class certification as a sanction. Even where "defendants

[do] not seriously contest[]" class certification," the "court nevertheless has the

responsibility of conducting its own inquiry as to whether the requirements of Rule

23 have been satisfied in a particular case. *Valley Drug Co. v. Geneva Pharm., Inc.*,

350 F.3d 1181, 1188 (11th Cir. 2003) (citing *Martinez–Mendoza v. Champion Int'l

Corp.,* 340 F.3d 1200, 1216 n. 37 (11th Cir. 2003)). This is because a judgment in a

class action binds class members, and the Court therefore has a duty to ensure their

interests are adequately represented and their due process rights are protected.

Fed. R. Civ. P. 23(c)(2)(B)(vii), (c)(3). The Court therefore proceeds to undertake

the required "rigorous analysis" required for class certification. *Comcast,* 569 U.S. at 33.

### B.   Ascertainability

Paragraph 88 of the Third Amended Complaint defines the putative class as follows:

> All persons nationwide who (i) established and funded a prepaid account through GTL's interactive-voice-response ("IVR") system and (ii) had a positive account balance that was reduced to $0.00 due to account inactivity for 180 days or less.

(Doc. 178.) Paragraph 150 further provides that "[t]o the extent the Court deems it necessary to do so, the Court may certify a FCA subclass of Class members who in addition to meeting the criteria for class membership set forth in Paragraph 88, received or intended to receive at least one interstate call."

"One threshold requirement is not mentioned in Rule 23, but is implicit in the analysis: that is, the plaintiff must demonstrate that the proposed class is 'adequately defined and clearly ascertainable.'" *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014) (quoting *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* (quoting *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y .2009)). "The analysis of the objective criteria also should be administratively feasible. 'Administrative feasibility' means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting Newberg on Class Actions § 3.3 p. 164 (5th ed.2012)).

The requirement of manageability of ascertaining the class in some ways dovetails with the requirement of manageability of the class action under Rule 23(b)(3)(D). As an initial matter, the Court is concerned about the manageability of a nationwide class action, particularly when all representative plaintiffs and class counsel are Georgia-based. This concern also goes to the heart of several other class-related issues, including typicality, commonality and adequacy of representation. *Cf. State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 329 (5th Cir. 1978)[6] (affirming certification of state class but reversing national class in antitrust case).

Experience drawn from other courts faced with this subject matter is also instructive. The *James* class, which was successfully prosecuted to settlement, was limited to persons calling inmates in New Jersey, while the *Stuart* class was nationwide and was later decertified. *Compare James v. Global Tel*Link Corp.*, 13-4989, 2018 WL 3727371, at *4 (D.N.J. Aug. 6, 2018), *with Stuart v. Global Tel*Link Corp.*, 956 F.3d 555, 559 (8th Cir. 2020). Limiting calls to Georgia, however, would overlook the assertion by Mr. Githieya that he set up his account to communicate with his relative in South Carolina, which is not an atypical situation given the states' proximity. Instead, the Court will *sua sponte* refine the class definition to be limited to individuals who set up GTL accounts to receive

---

[6] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all cases decided by the Fifth Circuit before September 30, 1981.

phone calls from specific relatives or friends located in prison facilities in Georgia or South Carolina.

The Court makes one further adjustment to the Plaintiffs' proposed class definition. At present, it has no opening date. As Plaintiffs point out, Georgia courts apply Georgia's statutes of limitations for contract claims even where the contract is governed by a different state's substantive law. (Reply Class Cert. at 15) (citing *Found. for Lost Boys v. Alcon Entm't, LLC*, No. 1:15-CV-00509-LMM, 2016 WL 4394486, at *12-13 (N.D. Ga. Mar. 22, 2016); *Hunter v. Johnson*, 376 S.E.2d 371, 372 (Ga. 1989).) And, as GTL notes, "[i]n Georgia, the limitations period "runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." (Am. Resp. Class Cert at 32) (citing *Moore v. Dep't of Human Res.*, 469 S.E.2d 511, 512-13 (Ga. Ct. App. 1996).)

As to the length of the limitations period, GTL contends that the contracts are oral contracts. (*Id.*) In contrast, Plaintiffs contend that the contracts were written, because "Plaintiffs and the class members heard a written script recited by a computer over the phone, after which they transmitted an electronic 'signature' to certain terms by pressing buttons on their phones." (Reply Class Cert at 4) (citing *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 979 (9th Cir. 2007).) This dispute is determinative as to the class opening date because in Georgia, the statute of limitations for breaches of simple written contracts is six years, O.C.G.A. § 9-3-24, but for oral contracts is four years, O.C.G.A. § 9-3-25. Under Georgia law, "when essential terms of a contract are not in writing but

instead must be implied or presumed from parol evidence of the parties' conduct, the contract is not considered a written one, and the four-year limitation period set forth in OCGA § 9–3–25 controls." *Harris v. Baker*, 652 S.E.2d 867, 869 (Ga. Ct. App. 2007). Even assuming the IVR script could constitute a "writing," one essential term of the contract at issue, the cost of receiving phone calls from inmates, was not a part of the script.[7] As such, the four year period applies.

For these reasons, the Court amends the class definition as follows:[8]

> All persons nationwide who (i) established and funded a prepaid account through GTL's interactive-voice-response ("IVR") system in order to receive telephone calls from a person incarcerated in Georgia or South Carolina, and (ii) had a positive account balance that was reduced to $0.00 due to account inactivity for 180 days or less on or after April 3, 2011.

This proposed definition borrows heavily from the class definition in *James*, which as the Court has noted, was manageable enough to permit an orderly settlement of the claims at issue.[9]

---

[7] The calling rates are set forth in GTL's contracts with institutions. *See James v. Glob. Tel\*Link Corp.*, No. 13-4989, 2018 WL 3727371, at *1 (D.N.J. Aug. 6, 2018); *Glob. Tel\*Link v. F.C.C.*, 866 F.3d 397, 404 (D.C. Cir. 2017); *Mojica v. Securus Techs., Inc.*, No. 5:14-CV-5258, 2018 WL 3212037, at *2 (W.D. Ark. June 29, 2018), *aff'd in part, appeal dismissed in part sub nom. Stuart v. Glob. Tel\*Link Corp.*, 956 F.3d 555 (8th Cir. 2020). However, the Court also holds below that the absence of this term from the IVR script does not defeat class certification, as the Court need not ascertain the cost per minute of a phone call on an individual basis to certify a breach of contract claim based on GTL's taking of inactive account balances.

[8] The Court retains the "180 day" provision based on Plaintiffs' assertion that some class members may have been subject to a 180-day inactivity period.

[9] *James*, No. 13-4989, 2018 WL 3727371, at *4 ("All persons of the United States who, at any time since 2006 were incarcerated in a New Jersey prison or correctional institution who use or used the phone system provided by Defendants or, **who established an advance pay account with Defendants in order to receive telephone calls from a person incarcerated in New Jersey**, excluding Essex County prior to June 2010, or persons receiving calls from persons incarcerated in Essex County prior to June, 2011") (emphasis added).

The Court recognizes that Plaintiffs have submitted evidence that the breakage policy is relatively uniform nationwide.  The Court is not foreclosing amending or otherwise tweaking the class definition to encompass a broader class at a later point, provided an adequate factual predicate is shown that the representative plaintiffs or the inmates they called were impacted on a geographic scale broader than Georgia and South Carolina.

Turning next to the issue of identifiability, Plaintiffs contend that the class can be ascertained by reference to GTL's own records. Plaintiffs assert that "GTL's AMES computer systems maintain detailed transaction histories for each AdvancePay account, including Plaintiffs' accounts." (Pls.' Br. Class Cert. at 10) (citing 30(b)(6) Dep. Baker I at 17:6–13, Doc. 88; Deposition of Christopher McNitt at 30:18–22, Doc. 118.) They contend that "[e]ach transaction history identifies the telephone number associated with the account, as well as the date the account was established," as well as how the account was created and funded. (*Id.*) (citing Dep. Phillips at 134:7–14, 70:2–23, 121:9–123:2, Doc. 87.)[10] GTL's records also reveal the date of breakage and amount of money in inactive accounts. Dep. McNitt at 32:15–34:15; Dep. Baker I, at 77:2–14.)[11]

---

[10] The ZIP Code associated with the credit card used to load the account is kept in a separate database along with the credit card information, subject to industry requirements requiring disposition of credit card data after a certain amount of time. (Dep. Philips at 131–132, 134:20–23.)

[11] The Parties have stipulated that GTL will not "use, offer into evidence, or rely upon any facts concerning the unavailability of AMES account data that has been deleted pursuant to GTL's policy or practice of deleting information relating to AdvancePay accounts that were inactive for two years in opposition to Plaintiffs' motion for class certification." (Doc. 95.)

GTL argues that the class is not ascertainable because its records only contain phone numbers, not names or addresses.[12] This argument was rejected by the district court in *James*, which noted that "[a]t the very least, these class members can be identified by the telephone number associated with each account," and that "[i]nformation regarding all payments, fees and transactions associated with an Advance Pay account can be easily retrieved using the telephone number associated with the account." No. 13-4989, 2018 WL 3727371, at *10.

GTL argues that telephone numbers can change hands, but the *James* court recognized that this obstacle could be overcome if class members "provide an affidavit with proof that the particular phone number associated with the account belonged to that class member during the relevant time period." *Id.* For telephone numbers which were used at least once, a phone number could also be authenticated by providing the name of any institution from which an inmate called the number on a claim form or affidavit. It is highly unlikely that the holder of a transferred phone number would have this information.

GTL also argues that the Plaintiffs' FCA subclass is not ascertainable because the FCA claim requires a showing that members of the class received or intended to receive at least one interstate call. (GTL Supp. Br. at 3, Doc. 182-1) (citing Compl.

[12] GTL also implies that some individuals may have had notice or received refunds, and thus are not class members. (Am. Resp. Class Cert. at 38.) The Court disagrees. GTL's possible affirmative defenses do not bear on ascertainability at all because the class definition does not exclude class members subject to such defenses. This is really a disguised argument about commonality or predominance.

¶ 148).[13] The Court will pick up on this thread later when it considers predominance, as it ties in with other issues which together lead the Court to conclude that Plaintiffs have not met their burden under Rule 23 as to the FCA claim.

### C.    Commonality and Predominance

Rule 23(a)(2) requires a class proponent to prove that there "are questions of law or fact common to the class." Moreover, Rule 23(b)(3) requires the Court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)*, abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)) (quoting *Rutstein v. Avis Rent–A–Car Sys.*, 211 F.3d 1228, 1234 (11th Cir. 2000)) (internal quotations omitted). "In determining whether class or individual issues predominate in a putative class action suit, [the Court] must take into account 'the claims, defenses, relevant facts, and applicable substantive law,' to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Id.* at 1254 (quoting *Castano v. Am.*

---

[13] The Court previously held that the "end to end jurisdictional analysis" applicable to FCA's interstate communication element requires a showing that a call originated from one state and was received in another, or that such an interstate call was intended but thwarted. (Sept. 7, 2018 Order at 12, Doc. 170.)

*Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.* at 1255 (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003)).

The Court examines the commonality and predominance factors for each of Plaintiffs' claims in turn.

### 1.    Breach of Contract Claim

Plaintiffs' primary claim is one for breach of contract. Plaintiffs contend that for customers who set up their accounts via IVR, the "customer manifests her assent" to the following terms, and only those terms, "by providing an affirmative to three terms":

> (i)    pressing a button to "create a new prepaid account or to make a credit card deposit";
> (ii)   pressing a button to select the deposit amount; and
> (iii)  inputting payment information to make the desired prepaid deposit.
> In exchange, GTL agrees to hold the customer's funds on deposit until such time as they are "applied" to pay for a call.

(Pls.' Br. Class Cert. at 7.) Plaintiffs argue that the following class-wide evidence supporting this class-wide contract is available through GTL's admissions and records:

> (1) contracts between the class members and GTL (in the form of the uniform IVR script);
> (2) classwide proof of how GTL's uniform and automated breakage practice breached the contract; and

21

(3) the amount of deposits converted due to GTL's breakage practice.

(Pls.' Br. Class Cert. at 24, Doc. 123-1.)

As a result of the Court's Sanctions Order and consistent with the record evidence, the Court has held that the named Plaintiffs and the putative class have valid contracts with GTL that do not include the "may expire" statement. For Plaintiffs and class members, then, all that is left to be established is the amount each member had deposited at each "breakage." Common questions clearly predominate. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'") (quoting Newberg on Class Actions § 4:54 (5th ed.)).[14]

Even absent the Court's sanction, the Court would hold the inclusion of the "may expire" statement would not preclude certification of the contract claim for the same reasons the Arbitrator held that the "terms of use" were not part of the contract in this case — the IVR system did not require class members to agree to that statement. *Githieya v. Global Tel*Link Corp.*, JAMS File No. 1440005162, slip op. at 3 (JAMS March 10, 2017) (Westmoreland, Arb.) (Doc. 27-1) (citing *James v. Global Tel*Link Corp.*, No. 13-4989-WJM, 2016 WL 589676 (D.N.J Feb. 11,

---

[14] GTL has raised a number of specters that it contends defeat commonality, for example, that some payments were made by non-class members, that other payments were made with actual knowledge of the policy, and that accounts marked inactive were later refunded or reinstated. (Am. Resp. Class Cert. at 33) However, "individual affirmative defenses generally do not defeat predominance." *Brown*, 817 F.3d at 1240.

2016)).[15] For these reasons, no individualized inquiry will be necessary as to whether the statement was agreed to or not. GTL asserts that some class members would have heard about the policy via brochures or GTL's website, and others by communicating with a customer-service personnel. (Am. Resp. Class Cert. at 16, Doc. 139.) However, as Plaintiffs point out, "GTL does not offer evidence of a single instance in which this hypothetical actually occurred," other than assertions about what customer-service personnel are "required" to say, and, as the Court noted in its Sanctions Order, GTL does not currently "ask or require [] call center personnel to inform customers of the 90-day inactivity policy." (Baker Dep. I at 208:21– 209:10.) "'[M]ere conjecture that some class members may have acted with knowledge' of a practice they challenge is not a basis to deny class certification." (Pls.' Reply Class Cert at 2) (quoting *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 643–44 (5th Cir. 2016) (en banc), *cert. denied*, 138 S. Ct. 76 (2017)).

GTL next argues that the purported class-wide contract lacks a basic term, rates, and is therefore not fully integrated. Thus, GTL argues, individual inquiries into what terms were agreed to will be necessary. But as Plaintiffs point out, there is no evidence that any of the putative class members agreed to the inactivity policy, because no button-press or verbal response was required. (Pls.' Reply Class

---

[15] The Arbitrator applied Georgia law. JAMS File No. 1440005162, slip op. at 3. Contract formation issues in South Carolina appear to be governed by the common law. *Kitchens v. Lee*, 69 S.E.2d 67, 69 (S.C. 1952) ("A meeting of the minds, actual or implied, is, of course, essential for the formation of a legally enforceable contract, and authority need not be cited for this primary concept."). As such, Georgia courts would "apply the common law as expounded by the courts of Georgia," and therefore, no different outcome would result for class members that set up accounts to call South Carolina institutions. *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 834 (Ga. 2017).

Cert at 7.) Moreover, there is no need to fully integrate an oral contract not subject to the statute of frauds to enforce it. The Court need not ascertain what rate per minute each individual class members' agreed to because Plaintiffs are not alleging that GTL breached this aspect of the contract. Plaintiffs are alleging that GTL took *all* of the money remaining in inactive accounts, regardless of how much was actually used to pay for calls prior to such time.

GTL also argues that state law varies on the statute of limitations and when a breach claim accrues (as well as for affirmative defenses), but these issues are vastly ameliorated by the Court's narrowing of the class to Georgia and South Carolina. While the Court's revised class definition includes persons outside of Georgia or South Carolina who set up accounts in order to receive calls from inmates in Georgia or South Carolina institutions, the application of Georgia or South Carolina law respectively is proper because the class contracts were made to be performed in the state where the inmate was housed. *Gen. Tel. Co. of Southeast v. Trimm*, 311 S.E.2d 460, 461 (Ga. 1984)  ("[Under *lex loci contractus*, contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied.") (quoting *Tillman v. Gibson*, 161 S.E. 630 (Ga. Ct. App. 1931)).[16]

---

[16] The parties agreed before the Arbitrator that Georgia contract law applied to contract formation questions in this case. *Githieya*, JAMS File No. 1440005162, slip op. at 3 (Doc. 27-1). For contract

Finally, potential affirmative defenses such as mitigation, waiver, and voluntary payment are no bar to certification, and the potential variance in state law is mitigated for the above reasons. *Brown*, 817 F.3d at 1240 ("[I]ndividual affirmative defenses generally do not defeat predominance."). Common issues of fact and law exist and indeed predominate.

### 2.   Federal Communications Act Claim

As noted above, the FCA's "interstate communication element" requires a showing that a prohibited practice implicated a call originating from one state and received in another, or an intended interstate call. (Sept. 7, 2018 Order at 12, Doc. 170.) In the ascertainability section, above, the Court noted that it would revisit the impact of this interstate requirement on certification in this section.

GTL contends that the interstate communication requirement prevents certification on predominance grounds, pointing to the Eighth Circuit's decision in *Stuart v. Glob. Tel*Link Corp.*, 956 F.3d 555, 560 (8th Cir. 2020). That case involved a claim under the FCA that GTL's "deposit fees were unjust and unreasonable because they greatly exceeded the cost of processing deposits." *Id.* The certified class included "all individuals who had paid these deposit fees." *Id.* However, the class was decertified because the FCA only limits deposit fees for interstate calls, not intrastate calls. *Id.* (citing *Global Tel*Link v. FCC*, 866 F.3d 397, 415 (D.C. Cir. 2017)). The Eighth Circuit held that for each deposit fee, the

---

formation issues, Georgia common law would apply to all class members' claims for reasons the Court gave in the previous footnote.

trial court would have to determine whether "a particular plaintiff ma[de] deposit fees for intrastate or interstate calls." *Id*. Moreover, if the plaintiff made both types of deposits," the Court pointed out that each class member would have to show "what proportion was dedicated to interstate calls.'" *Id*. Because the plaintiffs presented no "reliable mechanism" for sorting these claims, the appeals court held the plaintiffs had not shown predominance and affirmed the decertification order. The Court finds that certification is not appropriate here for the same reasons.[17]

Moreover, as GTL correctly points out, the interstate calling issue impacts ascertainability of the class. Plaintiffs contend that for much of this subclass, GTL's own records will be able to show whether a person received an interstate call. But there is no way from GTL's records to determine in which state a person using a cell phone was standing at the time they received a phone call from an inmate, and it is possible that even a class member may not recall that information. For all of these reasons, the Court finds certification of the FCA claim is not viable under the facts of this case.

### 3.    Unjust Enrichment Claim

Because the Court today certifies a breach of contract claim for class treatment, the unjust enrichment class claim is an alternative remedy for the class members who cannot prove the existence of a contract. "Unjust enrichment claims can be certified for class treatment where common circumstances bear upon

---

[17] It is worth noting that the *James* plaintiffs withdrew their FCA claim, noting that similar relief could be obtained through their other claims. Letter, No. 13-cv-4989-WJM, Doc. 38 (D.N.J. Sept. 19, 2014).

whether the defendant's retention of a benefit from class members was unjust." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015). GTL's primary arguments against certifying this claim go to variances in state law and affirmative defenses such as unclean hands and voluntary payment. However, the Court has limited the scope of the class to those affected by Georgia and South Carolina, and "[t]here is general agreement among courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.' *Id.* (citing *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp.2d 458, 477 (D.Del.2010)). As to voluntary payment, the Court has held that the "may expire" statement in this case is not a bar to unjust enrichment claims for those class members who have heard it.  In any case, it would not defeat certification. GTL attempts to distinguish *Checking Account Overdraft Litigation* because there was "no evidence that any class members learned the true nature and impact of" the "alleged scheme," 307 F.R.D. at 648, but here, GTL's "formal policy" is not to "tell customers that accounts will time out after 90-days." (Baker Dep. I at 163:14–16.) The remaining arguments, such as Mr. Githieya's alleged unclean hands, go to affirmative defenses, which do not defeat class certification for reasons the Court gave above.

### D.   Superiority

Finally, to maintain a class action under Rule 23(b)(3), the class proponent must show that a class action is "superior" to other methods of adjudication. In making this finding, the Court must consider

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

GTL barely challenges this requirement, largely incorporating arguments about ascertainability and predominance. The Court finds that all the superiority factors weigh in favor of a class action because pursuing the individual claims in this case would likely be economically infeasible. As Plaintiffs point out, "[o]n average, GTL took less than $8 from each affected accountholder." (Br. Class Cert. at 34) (citing Spreadsheet with GTL AdvancePay Monthly Deposits, Pl.'s Ex. 25 at 3, Doc. 123-37.) The suggested difficulties in managing the class action have been mitigated and addressed by the Court's refinement of the class definition. GTL implies that the availability of refund to class members renders a class action inferior, citing *Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). However, as that case noted, refunds are not a method of "adjudication," and in any event, GTL's cumbersome procedure for obtaining a refund can barely be considered an option.

### E.   Numerosity, Typicality and Adequacy of Representation

The Court "lumps" the remaining requirements here. As an initial matter, GTL does not contest numerosity, which is clearly satisfied. *James*, No.13-4989, 2018 WL 3727371, at *4 (Numerosity is satisfied when joinder of all putative class

members is impracticable. Fed. R. Civ. P. 23(a)(1). That is obviously true of this putative class, which includes many thousands of inmates and those who interacted with inmates by telephone over more than a decade.").

GTL barely contests the remaining requirements, devoting five lines to typicality and not addressing adequacy of representation at all. "Courts have regularly found that typicality is satisfied where a defendant has engaged in a common course of misrepresentation or concealment, even where class representatives were not subject to identical contracts." *Checking Account Overdraft Litig.*, 307 F.R.D. at 642. While Mr. Githieya never received a phone call, the other representative plaintiffs did. And, while Mr. Githeya's claim may vary because he "was told about the inactivity policy and the refund policy," and "had his lawyer pay money after filing this lawsuit," this variance does not change the fact that the injury visited upon him is typical of the class and the argument does not at all address the other two clearly representative Plaintiffs who made IVR deposits and experienced account breakages both before and after 2014.[18]

---

[18] GTL suggests in a footnote that Plaintiffs' notice of the inactivity policy (purportedly through Mr. Githieya's imputed notice from counsel or through alleged required statements to be made by phone operators) and action consistent with the policy (depositing more funds) constitutes acceptance of a purported inactivity policy term. (Am. Resp. Class Cert. at 22 n.7). But as to Mr. Githieya, this conflates notice of a *practice* with notice of a *contract term*. As the Court noted in its Sanctions Order, for many years, the "may expire" statement was not, in fact, part of the script, despite GTL's false assertions otherwise, and thus GTL likely gave no notice of the contract term during Mr. Githieya's contract formation. As to the remaining Plaintiffs, the falsity of this assertion about the IVR script of course bears on the credibility of GTL's statements regarding what phone operators would or would not say. And, as Plaintiffs point out in their brief, "GTL testified that, in 2014 (around the time the FCC began scrutinizing GTL's breakage practice), it made a 'deliberate decision' to 'remove the instruction . . . to advise the customer of the inactivity policy' from its call-center "training manual" but still continued to appropriate these deposited funds. (Pls.' Reply Class Cert at 8) (quoting Dep. Baker I at 213:11-22.)

Finally, while GTL does not clearly make the argument, it appears to imply that Mr. Githieya's pre- and post-litigation conduct in connection with his lawyer mentioned above renders him an inadequate representative. However, a representative is only inadequate where the "conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). Furthermore, the same argument cannot be made for the other two class representatives. While GTL elicited limitations in depositions of their recollection of their dealings with it and their understanding of the claims, as was noted in *James*, "[t]his argument deserves little" given the swift nature of the calls and the passage of time, not to mention Defendants' own misleading and confusing representations. *James*, No. 13-4989, 2018 WL 3727371, at *5.

Likewise, the Court has reviewed the Declarations of Michael Caplan, James Cobb, and James Radford in support of proposed class counsel Caplan Cobb LLP and Radford & Keebaugh, LLC and find they are adequate class counsel for the reasons given in Plaintiff's opening brief. (Pls.' Br. Class Cert. at 40, Docs. 123-1, 123-6–8.)

## IV.   Conclusion

For the above reasons, the Motion for Class Certification [Doc. 122] is **GRANTED**. The Court **ORDERS** the parties to resume mediation in furtherance of settlement of this case consistent with the terms of the Sanctions Order. The

Clerk is **DIRECTED** to administratively close this case pending the parties' report on the results of the mediation.

      **IT IS SO ORDERED** this 30th day of November, 2020.

                                                  **Honorable Amy Totenberg**
                                                  **United States District Judge**